# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3533

———————

United States of America,

      Appellee,

v.

Steven B. Frencher,

      Appellant.

\*   Appeal from the United States
\*   District Court for the
\*   Western District of Missouri.

———————

Submitted:  September 28, 2007
Filed:  October 4, 2007

———————

Before BENTON, BOWMAN, and SHEPHERD, Circuit Judges.

———————

BOWMAN, Circuit Judge.

Steven B. Frencher appeals from the order of the District Court[1] denying his motion to suppress.  We affirm.

We state the facts as found by the District Court.  Frencher's testimony at the hearing on his motion differed in several material respects from the court's findings,

———————

[1] The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

but the court declared that Frencher's evidence was not credible. A credibility determination made by a district court after a hearing on the merits of a motion to suppress is "virtually unassailable on appeal." United States v. Guel-Contreras, 468 F.3d 517, 521 (8th Cir. 2006) (quoting United States v. Rodriguez, 414 F.3d 837, 845 (8th Cir. 2005)). To the extent Frencher challenges the District Court's credibility findings, we see no clear error. See id. (standard of review).

On December 28, 2004, a uniformed Kansas City, Missouri, police officer, Jennifer Jacobs-Weyrauch, and Jackson County, Missouri, Deputy Sheriff O'Sullivan, in plainclothes, arrived at 4619 East 37th Street in Kansas City to serve an eviction notice. They knocked on the door, but no one answered. Because they could hear and see someone moving around inside the residence, the officers continued knocking, explaining why they were there, and waited for several minutes. Eventually, a man who was later identified as Frencher answered the door. When asked why he had taken so long to answer, he replied that he had several outstanding warrants for his arrest. Frencher stepped back into the residence, and the officers stepped inside. Jacobs-Weyrauch then saw a baggie of marijuana on a coffee table about two feet away. The officers promptly arrested and handcuffed Frencher and another man who was there. After the arrest, they asked Frencher for his name and ran a computer check, which confirmed that Frencher had three outstanding warrants for his arrest. Also, O'Sullivan did a protective sweep of the residence and found a loaded handgun in plain view.

While still inside, Frencher asked the officers if they would retrieve his coat from the living room and give it to his girlfriend, who had arrived at the residence and was outside. Before doing as Frencher asked, Jacobs-Weyrauch followed police department protocol for officer safety and searched the coat that Frencher identified as his, looking for weapons. Instead, she found a baggie of crack cocaine in a pocket of the coat. Later, after a search warrant had been executed at the residence, Don Stanze, a Kansas City, Missouri, police detective, interviewed Frencher, first advising

him of his <u>Miranda</u>[2] rights, which Frencher said he understood (Frencher was no stranger to the criminal justice system). During the interview, Frencher made self-incriminating statements.

Frencher entered a conditional guilty plea to one count of possessing more than fifty grams of crack cocaine with intent to distribute. He reserved the right to appeal the denial of his motion to suppress. In his motion, he alleged that the officers violated his rights when they forced him to give his name, making any incriminating evidence gathered after that point "fruit of the poisonous tree" that should be suppressed. <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963). But the District Court found that the officers did not ask Frencher to identify himself until after they arrested him with probable cause (marijuana in plain view). The court concluded that the officers acted lawfully throughout their encounter with Frencher and denied the motion to suppress. Frencher appeals. We review the District Court's factual findings for clear error and its legal conclusions de novo. <u>United States v. Hyles</u>, 479 F.3d 958, 965 (8th Cir. 2007).

On appeal, Frencher argues that he was "unlawfully seized and questioned" when the officers first asked him why he had taken so long to answer the door, then entered the residence and "allegedly" saw marijuana in plain view. Br. of Appellant at 13. According to Frencher, the officers "had no right to demand that the defendant answer the door, or to interrogate him when he did so." <u>Id.</u> at 15. Frencher is mistaken. Jacobs-Weyrauch and O'Sullivan arrived at 4619 East 37th Street to serve an eviction notice, a lawful pursuit that entitled them to make contact with anyone present in the residence and, indeed, to enter the residence. Soon after they first knocked on the door, they knew someone was moving about inside, and they continued knocking until the door was answered so they could complete their task. Asking Frencher why he took so long to answer the door (hardly an interrogation) did

---

[2]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

not violate his Fourth Amendment rights; the length of time that it took Fletcher to respond was a legitimate concern for the officers.  In any event, Frencher was not even asked to identify himself until after he had been arrested for possession of marijuana.  The officers' actions prior to the arrest did not constitute a detention that required reasonable suspicion—and when they spotted the marijuana in plain view, they had probable cause not only to detain Frencher but to arrest him.  See United States v. Tarantola, 332 F.3d 498, 500 (8th Cir.), cert. denied, 540 U.S. 1066 (2003).  And because we hold that Jacobs-Weyrauch and O'Sullivan did not violate Frencher's constitutional rights by asking him why it took so long for him to answer the door, the second part of Frencher's claim on appeal is unavailing.  The crack cocaine found in Frencher's coat and his subsequent incriminating statements are not fruits of an unlawful detention that must be excluded from evidence.

The order of the District Court denying Frencher's motion to suppress is supported by substantial evidence and based on a correct view of the applicable law.  See Hyles, 479 F.3d at 965.  We therefore affirm.

_____