# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3670

_____

United States of America,

      Appellee,

v.

Steven Jerome Schwarte,

      Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Southern District of Iowa.

_____

Submitted: January 10, 2011
Filed: July 15, 2011

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Steven Jerome Schwarte of one count of attempted sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) and (c); one count of receipt of visual depictions of minors engaged in sexually explicit conduct, in violation of § 2252(a)(2); and one count of possession of visual depictions of minors engaged in sexually explicit conduct, in violation of § 2252(a)(4)(B). The district court[1] sentenced Schwarte to 200 months' imprisonment on each of the first two counts and 120 months' imprisonment on the third count, with all sentences to run

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

concurrently. On appeal, he challenges the district court's denial of his motion to suppress evidence, as well as the sufficiency of the evidence on each count. He also argues that his counsel provided ineffective assistance. We affirm.

## I. *Background*

Between February and April 2007, Schwarte regularly communicated with a person whom he believed to be a 15-year-old girl named "Abby Smith" in a Yahoo! online chat room. In reality, "Abby" was an online alias for Naval Criminal Investigative Service (NCIS) Special Agent Megan Grafton, working undercover to find sexual predators online. Employing the username "jayschwarte," Schwarte quickly turned the conversation to sexual topics.[2] On February 9, 2007, Agent Grafton enlisted the help of Virginia Delaney, who could change her voice to mimic a teenage girl. Delaney called Schwarte four times that day to confirm that Schwarte actually existed, was a male, and was the owner of the phone number provided to Abby during the online chat on February 6, 2007.

In most of their subsequent online conversations, Schwarte repeatedly requested Abby to send him sexually explicit images of herself. Initially, Schwarte simply asked Abby to send the pictures. Later, he offered to provide Abby with a sexually explicit photograph of himself in exchange for a sexually explicit photograph of her. In another conversation, when Abby explained that she would have to borrow a camera from a friend, Schwarte encouraged Abby to take explicit pictures with her friend. He then offered to provide Abby a camera and a laptop computer in exchange for the pictures. When Schwarte next chatted with Abby, he offered her a web camera and requested a video of a sexual encounter between Abby and her friend. Schwarte also asked Abby to send, among other things, a pair of her underwear.

---

[2]Agent Grafton testified that, consistent with her training, she did not initiate any of the sexual discussions but that Schwarte raised these subjects without prompting.

In several of their online conversations, Schwarte also asked Abby to call him for sexual talk. On March 19, 2007, Schwarte sent Abby an offline instant message. He apologized for missing her phone call earlier in the night, indicating that he would not be home until approximately 11:00 p.m. He then gave Abby his mailing address in Dunlap, Iowa ("Dunlap address"). Agent Grafton received the message at 10:45 p.m. EST.

Around this time, NCIS informed the United States Postal Inspection Service (USPIS) of its investigation of Schwarte. With this information, on April 6, 2007, USPIS Inspector Nancy Harms-Werner filed an application and affidavit for an anticipatory search warrant for the residence at the Dunlap address. The affidavit described a proposed plan to make a controlled delivery of a package that Abby purportedly sent to the Dunlap address. The package contained a child-pornography videotape from the USPIS library and women's underwear. According to the affidavit, the controlled delivery of the package would serve as the triggering condition for the execution of the search warrant. The affidavit stated that, beginning April 9, 2007, the package would be "attempted to be delivered to Steven Schwarte or any other occupant" at the Dunlap address. If no one was at the Dunlap address to accept the package, delivery would be attempted again that day and subsequent days "up to the 10 days allowed by the requested search warrant."

On April 9, 2007, at approximately 11:00 a.m., USPIS Inspector David Margritz went to the Dunlap address to make a controlled delivery of a package containing a child-pornography videotape and women's underwear, addressed to "Jay Schwarte." Misty Frazier, Schwarte's adult niece, answered the door.[3] Inspector Margritz handed Frazier the package, and she told him that no one named "Jay

---

[3]Inspector Margritz could not remember who answered the door and initially (and incorrectly) testified that he thought it was Alice Schwarte ("Alice"), Schwarte's grandmother. Regardless, he testified that he was certain an adult female answered the door and accepted the package.

Schwarte" lived at the address. Although there was conflicting testimony over whether Inspector Margritz asked Frazier if Jay Schwarte accepted mail at the Dunlap address, there was no dispute that Inspector Margritz placed the package in Frazier's hands and that Frazier extended her hands to take the package. After Inspector Margritz left, Frazier took the package inside and placed it on a desk.

Shortly thereafter, Inspector Margritz, Special Agent Robert Larsen, and other law-enforcement officials returned to the Dunlap address to execute the search warrant. Officers found Schwarte sleeping in an upstairs bedroom. They woke him and advised him of his *Miranda* rights, and Schwarte signed a *Miranda* waiver form. The officers asked Schwarte, in general terms, if he knew why they were at his residence, and Schwarte responded by asking if it "was about the 15-year-old girl from the Internet." Inspector Margritz testified that Schwarte admitted to chatting online, using the screen name "jayschwarte" with a 15-year-old girl named Abby, and asking Abby to make and send sexually explicit images of herself.

Inspector Margritz also testified that when he opened the controlled-delivery package in front of Schwarte, Schwarte stated that the items in the package were the items he requested from Abby. Agent Larsen testified that Schwarte admitted that he had requested Abby to mail him her underwear and a sexually oriented video containing images of Abby and her friend. Agent Larsen also testified that Schwarte stated that he thought he was the only person at the Dunlap address who used Yahoo! or had access to "jayschwarte's" Yahoo! account. Upon the suggestion of Agent Larsen, Schwarte, still unaware of Abby's true identity, wrote an apology letter to Abby and her parents, apologizing and stating that he "should have told her it was just a joke" and that he "wasn't wanting her to go this far."

A grand jury indicted Schwarte on one count of attempted sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) and (e); one count of receiving visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C.

§ 2252(a)(2); and one count of possessing visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). Before trial, Schwarte filed a motion to suppress, challenging the validity of the anticipatory search warrant and seeking to suppress all evidence obtained pursuant to the warrant and statements that he made on April 9, 2007.

After holding an evidentiary hearing, the district court denied Schwarte's motion to suppress. The court found that the anticipatory search warrant was valid because the triggering condition—the delivery of the package—had occurred. In making this finding, the court considered the testimony from Inspector Margritz, Frazier, and Alice. The court found "the routine and less confrontational version of events offered by Inspector Margritz to be more credible" than the versions offered by Frazier and Alice. The court also determined that, "[w]ithout force or trickery," Inspector Margritz gave Frazier the package and Frazier took it. She did not "actively reject[]" the package. Because the delivery occurred, the anticipatory search warrant was valid.

At trial, Schwarte attempted to prove that he did not send some of the messages to Abby, including the message in which "jayschwarte" provided Abby with the Dunlap address. First, he called Sue Ator, an employee in charge of maintaining business records at CRT, Schwarte's place of employment. Ator testified that, based on Schwarte's payroll report, Schwarte was most likely working from 5:30 p.m. to 10:00 p.m. CST on March 19, 2007.[4] Second, Schwarte called his niece, K.M., who testified that she had access to Schwarte's computer and Yahoo! account. She also testified that she asked Abby to send the sexually explicit videotape to the Dunlap address. K.M., however, admitted that she never spoke with Abby on the phone, and K.M. could not recall the details of her alleged conversations with Abby.

---

[4]Agent Grafton, as noted above, received the message to Abby containing the Dunlap address at 10:45 p.m. EST.

Nevertheless, K.M. insisted that she specifically remembered providing the Dunlap address to Abby. Schwarte admitted that he initiated an online conversation with Abby but also testified that he chatted with her online only one time after his initial conversation with her.

At the close of the government's case and at the close of all evidence, Schwarte moved for a judgment of acquittal, which the district court denied. After the jury returned guilty verdicts on all three counts, Schwarte moved for a judgment of acquittal and for a new trial. The district court denied both motions.

Schwarte subsequently filed another motion for a new trial, under Federal Rule of Criminal Procedure 33(a) and (b)(1), based on newly discovered evidence. At an evidentiary hearing, Schwarte called two witnesses from CRT, a supervisor and an employee trainer, in an attempt to show that he did not have Internet access while at work on March 19, 2007—and thus could not have sent the offline message to Abby containing the Dunlap address. Both witnesses testified that CRT employees do not have Internet access on their work computers and are not allowed to use their cellular telephones while working. They both conceded, however, that employees could use their phones while on break. The trainer, who was conducting Schwarte's training session on March 19, 2007, testified that employees in training sessions were allowed to take unscheduled breaks and that he had seen Schwarte use his cell phone while on breaks.[5] Both witnesses testified that they would have been available to testify at trial.

After denying Schwarte's motion for new trial based on newly discovered evidence, the district court entered its judgment on all three convictions. The court sentenced Schwarte to concurrent sentences of 200 months' imprisonment on the

---

[5]The record is unclear as to whether this testimony related specifically to March 19, 2007, the date the offline message was sent.

attempted sexual exploitation conviction, 200 months' imprisonment on the receipt conviction, and 120 months' imprisonment on the possession conviction.

## II. *Discussion*

Schwarte raises three arguments on appeal. First, he contends that the district court erroneously denied his motion to suppress evidence. Second, he maintains that the evidence was insufficient to support each of his three convictions. Third, he asserts that his trial counsel provided ineffective assistance. We address each argument in turn.

## A. *Motion to Suppress*

Schwarte argues that the anticipatory search warrant used to search his residence at the time of his arrest was not valid because the triggering condition, the proper delivery of the package, never occurred. Schwarte argues that the triggering condition did not occur because no adult occupant ever accepted delivery of the package. In support of this argument, Schwarte states that the testimony of Inspector Margritz contradicts the testimony of Frazier and Alice, who were both at the residence when Inspector Margritz attempted to deliver the package. These witnesses both testified that (1) they told Inspector Margritz that no one named "Jay Schwarte" (the addressee on the package) lived at the residence, (2) Inspector Margritz placed the package in Frazier's hand, and (3) Inspector Margritz walked away as Frazier attempted to give the package back to him. Schwarte argues that, because the search warrant was not valid, his statements during the execution of the warrant should be suppressed as fruit of the poisonous tree.

The government responds that the district court correctly denied Schwarte's motion to suppress because its finding that the triggering condition occurred was based on a credibility determination and was supported by substantial evidence. Specifically, the government argues that this court should not overturn the district court's finding that Inspector Margritz was more credible than Frazier and Alice. The

government also argues that, even if this credibility determination is not taken into account, the evidence still shows that the triggering condition occurred.

"On an appeal of a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." *United States v. Castellanos*, 518 F.3d 965, 969 (8th Cir. 2008) (internal quotation and citation omitted). Further, "[a] credibility determination made by a district court after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." *United States v. Frencher*, 503 F.3d 701, 701 (8th Cir. 2007) (internal quotation and citations omitted).

In *United States v. Grubbs*, the Supreme Court upheld the constitutionality of anticipatory search warrants. 547 U.S. 90, 94–97 (2006). In reaching this conclusion, the Court explained that "[a]n anticipatory warrant is a warrant based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." *Id.* at 94 (internal quotation and citation omitted). These warrants "subject their execution to . . . a so-called 'triggering condition.'" *Id.* "If the government were to execute an anticipatory warrant before the triggering condition occurred, there would be no reason to believe the item described in the warrant could be found at the searched location"—that is, there would be no probable cause. *Id.*

The district court did not clearly err in finding, after an evidentiary hearing, that the triggering condition had occurred. The anticipatory search warrant defined the triggering condition as the controlled delivery of the package containing child pornography. Inspector Margritz testified that he asked Frazier if she would accept the

-8-

package for "Jay Schwarte"; that Frazier responded affirmatively; and that Frazier did, in fact, accept the package. The district court expressly found "the routine and less confrontational version of events offered by Inspector Margritz to be more credible" than the version offered by Frazier and Alice. Schwarte argues that Inspector Margritz's testimony is not credible because of his inability to remember which woman answered the door and the inconsistency of his testimony with Frazier's and Alice's. These arguments are insufficient to reject the district court's credibility determination on appeal. *Frencher*, 503 F.3d at 701. Accordingly, Inspector Margritz's testimony, by itself, supports the district court's findings.

In any case, the consistent elements of Inspector Margritz's, Frazier's, and Alice Schwarte's testimony support the district court's finding that the triggering condition occurred. The testimony from all three shows that Inspector Margritz handed the package to Frazier, who extended her hands to take it. It is immaterial whether Inspector Margritz asked Frazier if she would accept mail for "Jay Schwarte." Under the terms of the affidavit, the triggering condition only required delivery "to Steven Schwarte or any other occupant" at the Dunlap address. The uncontradicted testimony shows that the delivery occurred. Because the district court did not clearly err in finding that the triggering condition occurred, the court correctly determined that the anticipatory search warrant was validly executed and correctly denied Schwarte's motion to suppress.

B. *Sufficiency of the Evidence*

As noted, Schwarte challenges the sufficiency of the evidence for each of his three convictions. "'We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" *United States v. Scofield*, 433 F.3d 580, 584–85 (8th Cir. 2006) (quoting *United States v. Hamilton*, 332 F.3d 1144, 1148–49 (8th Cir. 2003)). "'[I]f there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty

beyond a reasonable doubt,' then '[w]e must uphold the verdict.'" *United States v. McCloud*, 590 F.3d 560, 565–66 (8th Cir. 2009) (quoting *United States v. Wainright*, 351 F.3d 816, 822 (8th Cir. 2003)).

### 1. *Attempted Sexual Exploitation of a Child*

Schwarte argues that there was insufficient evidence to support his conviction for attempting to sexually exploit a child because the government failed to prove beyond a reasonable doubt that he took a substantial step in furtherance of the act. Schwarte maintains that, even if the evidence established that he engaged in sexually explicit conversations with Abby online, the evidence did not show that he took the additional action necessary to convict him of this attempt offense, citing *State v. Bates*, 70 S.W.3d 532, 537–39 (Mo. Ct. App. 2002), in support.

In response, the government argues that there is "ample evidence" to support the jury's verdict. The government first disputes Schwarte's assertion that the prosecution must show he took a substantial step toward committing the crime in order to convict him on this count. Regardless, the government argues, the evidence shows that Schwarte repeatedly pressured Abby to make sexually explicit images and videos of herself and another minor friend, offered her a camera and a laptop in exchange for these items, repeatedly requested Abby to send him her underwear, and provided Abby with a mailing address to send the aforementioned items to him. The government also notes that, after waiving his *Miranda* rights, Schwarte admitted to using the screen name "jayschwarte" to chat with a 15-year-old girl named Abby and asking her to send the aforementioned items to him. All this evidence, the government argues, would allow a reasonable jury to find that Schwarte attempted to sexually exploit a child.

Schwarte was convicted by the jury of attempting to sexually exploit a child, in violation of 18 U.S.C. § 2251(a). A conviction under this statute requires the government to prove the following elements:

(1) that the defendant believed during the time period alleged in the indictment that the child named in the indictment was under the age of eighteen; (2) that the defendant attempted to use, persuade, induce, entice, or coerce that child to engage in sexually explicit conduct as defined in 18 U.S.C. § 2256(2); (3) that the defendant voluntarily and intentionally engaged in this behavior for the purpose of producing a visual depiction of such conduct; and (4) that the materials used to attempt to produce the visual depiction were mailed, shipped, or transported, including by computer, in interstate or foreign commerce.

*United States v. Pierson*, 544 F.3d 933, 938 (8th Cir. 2008). In arguing that the prosecution failed to prove that he took a substantial step in furtherance of the crime, Schwarte appears to challenge the sufficiency of the evidence as to the second element. *See, e.g.*, *United States v. Young*, 613 F.3d 735, 742 (8th Cir. 2010) (noting that an "attempt" conviction requires proving "intent to commit the predicate offense, and conduct that is a substantial step toward its commission" (internal quotation and citation omitted)). He does not raise any arguments challenging the sufficiency of the evidence as to the three other elements.

Addressing the government's contention as an initial matter, we have never considered whether the prosecution must prove that the defendant took a substantial step in order to obtain a conviction for attempted sexual exploitation of a minor under § 2251(a). In general, we require proof that the defendant made a substantial step for any attempt conviction. *See United States v. Bauer*, 626 F.3d 1004, 1008 (8th Cir. 2010) (stating that "[a] substantial step is necessary for an attempt conviction"); *see also Young*, 613 F.3d at 742 (requiring proof of a substantial step in order to prove attempted enticement of a minor to engage in sexual activity under 18 U.S.C. § 2422(b)). We also note that other circuits considering the issue have held that attempted sexual exploitation of a child under § 2251(a) does require that the prosecution prove that the defendant took a substantial step in furtherance of the act. *See United States v. Lee*, 603 F.3d 904, 918 (11th Cir. 2010); *United States v. Musumeci*, 307 F. App'x. 471, 472–73 (2d Cir. 2008) (unpublished); *United States v.*

-11-

*Wales*, 127 Fed. App'x. 424, 430–31 (10th Cir. 2005) (unpublished); *United States v. Johnson*, 376 F.3d 689, 693 (7th Cir. 2004); *United States v. Crow*, 164 F.3d 229, 235–36 (5th Cir. 1999). These cases are persuasive. Thus, we hold that, as with other attempt convictions, a conviction for attempted sexual exploitation of a minor under § 2251(a) requires proof that the defendant took a substantial step toward commission of the offense.

"A substantial step generally exists when a defendant takes actions 'necessary to the consummation of the crime' that were of 'such a nature that a reasonable observer, viewing [the actions] in context could conclude . . . that [the actions were] undertaken in accordance with a design to' commit the actual offense." *Young*, 613 F.3d at 743 (quoting *United States v. Mims*, 812 F.2d 1068, 1077 (8th Cir. 1987)). Although not speaking specifically in terms of a "substantial step," we have previously upheld a conviction for attempted sexual exploitation of a child where the defendant repeatedly attempted to persuade an undercover agent posing as a minor to engage in sexually explicit conduct and send him images of that conduct, requested naked photos, and offered compensation for nude pictures of her and her friends. *Pierson*, 544 F.3d at 938.

Here, the evidence showed that someone using the screen name "jayschwarte" repeatedly asked Abby to send nude pictures and videos of herself, along with her underwear. This person also repeatedly offered to provide a camera or laptop computer in exchange for nude pictures or videos of Abby and her friends. In addition, this person sent Abby a mailing address—the Dunlap address—where she could mail the video. As in *Pierson*, based on this evidence, a reasonable jury could conclude that this conduct constituted a substantial step toward the sexual exploitation of a child.[6]

---

[6]The case cited by Schwarte, in support of his contention that "[c]onversations about acts that would be criminal, without more, are not a substantial step towards committing those crimes," is a Missouri case addressing attempted statutory rape under state law, *see Bates*, 70 S.W.3d at 537–39, and is unpersuasive and inapplicable to the facts of this case.

A reasonable jury could also conclude, based on the evidence, that Schwarte was the person communicating online with Abby as "jayschwarte." Schwarte admitted to Inspector Margritz and Agent Larsen that he chatted online with Abby using the username "jayschwarte." He also admitted that he asked her to make and send sexually explicit images to him. When Inspector Margritz opened the controlled-delivery package in front of Schwarte, Schwarte stated that the items in the package were the items he had requested from Abby. Schwarte also admitted to Agent Larsen that he had requested those specific items from Abby. He also told Agent Larsen that he thought he was the only person at the Dunlap address who used Yahoo! or had access to the "jayschwarte" Yahoo! account. Although K.M. testified that she engaged in sexually explicit conversations with Abby and sent her the Dunlap address using the "jayschwarte" account, she could not remember any details of her alleged conversations. Moreover, K.M. testified that she never spoke to Abby on the phone, despite the fact that "jayschwarte" frequently asked Abby to talk on the phone and did, on at least one occasion, speak to someone posing as Abby. Similarly, Schwarte's testimony that he only chatted with Abby one time after his initial conversation with her contradicted the statements that he made to Inspector Margritz and Agent Larsen. In light of all the testimony and evidence, the jury could have reasonably concluded that Schwarte was using the "jayschwarte" account when committing the substantial steps toward the sexual exploitation of Abby. *Cf. United States v. McArthur*, 573 F.3d 608, 614 (8th Cir. 2009) (noting that, to uphold a verdict challenged for insufficient evidence, "the evidence need not exclude every reasonable hypothesis except guilt" (internal quotation, alteration, and citation omitted)). Thus, the evidence was sufficient to support Schwarte's conviction for attempted sexual exploitation of a child.

## 2. *Receipt of Child Pornography*

Schwarte also argues that the evidence cannot support his conviction for receiving child pornography because it does not show that he "knowingly" received any items of child pornography. According to Schwarte, he did not act knowingly

because he was "asleep and completely unaware of the events unfolding around him" when the controlled delivery of child pornography to the Dunlap address was made.

The government responds that the evidence supports the jury's verdict because Schwarte "knowingly received the child pornography when it was delivered to his home, as he instructed, because he then acquired it or obtained possession of it, regardless of whether his receipt was actual or constructive, sole or joint." The government asserts that Schwarte "knowingly received the child pornography he ordered" when "[i]t was delivered to his residence." The government maintains that there is no requirement that a defendant be awake in order to knowingly receive an item of child pornography, citing *United States v. Osborne*, 935 F.2d 32 (4th Cir. 1991), in support. According to the government, the fact that Schwarte knew what he had ordered and affirmatively acted to have it delivered is enough.

The jury found that Schwarte knowingly received visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). "The elements of receipt under 18 U.S.C. § 2252(a)(2) require the defendant to knowingly receive an item of child pornography, and the item to be transported in interstate or foreign commerce." *United States v. White*, 506 F.3d 635, 641 (8th Cir. 2007). Schwarte disputes the first element, arguing that the evidence was insufficient for a reasonable jury to find that he knowingly received the child pornography because he was asleep when it was delivered.

The crime of knowingly receiving child pornography does not require proof that a defendant be present and awake when the child pornography is delivered to his residence. Of course, as a general principle of criminal law, "[c]riminal liability is normally based upon the concurrence of two factors, 'an evil-meaning mind [and] an evil-doing hand . . . .'" *United States v. Bailey*, 444 U.S. 394, 402 (1980) (alteration in original) (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952)). The requirement of concurrence, however, does not necessarily require that the defendant's

-14-

mental state and physical conduct coincide at the same precise moment in time. Rather, concurrence may exist if the defendant's mental state "actuates" the physical conduct. *See* 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.3(a) at 451, 454 (2d ed. 2003). Similarly, and more to the point, the Supreme Court has explained that a defendant acts knowingly "if he is aware that that result is practically certain to follow from his conduct." *Bailey*, 444 U.S. at 404 (quotation and citation omitted). In other words, a defendant's state of mind at the precise moment he physically receives the child pornography may, in some cases, be irrelevant.

The Fourth Circuit's decision in *Osborn* illustrates these principles. There, the defendant argued that he could not have knowingly received a package containing child pornography that was delivered when he was not home and seized by federal authorities before he had accepted it. 935 F.2d at 34 & n.2 The Fourth Circuit rejected his argument as "meritless," stating:

> The statutory provision [the defendant] cites was intended to protect persons who have received child pornography by mistake; unlike such persons, [the defendant] knew exactly what he ordered, and affirmatively acted to have the materials delivered to his residence. In this Circuit we adhere to a definition of "knowing receipt" which accords with the common-sense understanding of the term.

*Id.* at 34 n.2. The court further explained that its approach was consistent with the concept of constructive possession, whereby the defendant was "deemed to have constructive possession of the videotapes upon their delivery to his residence, the point at which he achieved the power to exercise dominion and control over them." *Id.*

Similarly, we have little trouble concluding that the evidence sufficiently established that Schwarte knowingly received the child pornography contained in the controlled-delivery package, despite being asleep at the precise moment the child

pornography arrived at his residence. Schwarte knowingly, and repeatedly, asked Abby to send him various items of child pornography. He provided Abby with the Dunlap address so that she could mail those items to him. A few days later, the controlled-delivery package was delivered to his residence, and its contents, by Schwarte's own admission, matched the items he had requested from Abby. At a minimum, the evidence showed that Schwarte knew what child pornography was, requested its production, desired its possession, and requested its delivery to his place of residence, which occurred according to his direction. A reasonable jury could have found that Schwarte knew that his conduct would result in his receiving the child pornography. As in *Osborne*, Schwarte "knew exactly what he ordered, and affirmatively acted to have the materials delivered to his residence." *Id.* The child pornography did not arrive at the Dunlap address by mistake. Moreover, despite being asleep, Schwarte "received" the child pornography when he came into constructive possession of it, as explained below. For these reasons, we conclude that the evidence was sufficient for a reasonable jury to find that Schwarte knowingly received the child pornography.

### 3. *Possession of Child Pornography*

As with the receipt conviction, Schwarte contends that he could not have knowingly possessed any items of child pornography because they were delivered while he was asleep. He also argues that he did not have constructive possession of the child pornography because he could not have intended to exercise dominion and control over the child pornography while he was asleep.

"The elements of possession under 18 U.S.C. § 2252(a)(4)(B) require the defendant to knowingly possess an item of child pornography, and the item to be transported in interstate or foreign commerce by any means." *White*, 506 F.3d at 641. As with his conviction for receiving child pornography, Schwarte disputes the first element, arguing that the evidence was insufficient for a reasonable jury to find that

he knowingly possessed child pornography because he was asleep when it was delivered.

For the reasons stated above, Schwarte's knowing state of mind and initial possession of the child pornography need not have been simultaneous. It is sufficient that Schwarte knowingly set into motion the events which resulted in his possession of the child pornography, *see* 1 LaFave, *supra* at § 6.3(a) at 451, 454, and knew that his conduct would result in his possessing the child pornography, *see Bailey*, 444 U.S. at 404. It is apparent that the only reason Schwarte argues that he did not possess the package due to his sleeping is the criminal consequences of its possession. He would not argue similarly if the package contained something, such as a winning lottery ticket, for which Schwarte desired to claim possession.

Moreover, we have recognized that a defendant may constructively possess items of child pornography. *United States v. Acosta*, 619 F.3d 956, 960–61 (8th Cir. 2010). "[C]onstructive possession of contraband is established when a person has ownership, dominion or control over the pornographic material itself, or dominion over the premises in which the pornographic material is concealed." *Id.* at 961 (quotation, alterations, and citation omitted) (borrowing the concept of constructive possession from a controlled-substance prosecution). "Possession may be joint; it need not be exclusive . . . ." *United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011) (quotation and citation omitted).

Here, the evidence sufficiently shows that Schwarte knowingly possessed the child pornography. A reasonable jury could have concluded that Schwarte constructively possessed the child pornography. The testimony from all eyewitnesses established that the controlled-delivery package containing child pornography was addressed to "Jay Schwarte" and delivered to the Dunlap address, where Schwarte resided. Based on his Yahoo! username, the jury could have reasonably concluded that "Jay Schwarte" was the defendant. Thus, the evidence was sufficient for a reasonable

jury to conclude that Schwarte had ownership, dominion, or control over the package. In addition, for the reasons explained above, a reasonable jury could have concluded that Schwarte's possession of the child pornography was "knowing," despite the fact that he was asleep from the time it arrived until the time the police executed the search warrant. The evidence showed that Schwarte's knowing conduct actuated his possession of the child pornography and that Schwarte would have known that such conduct would result in his possession of the child pornography. Therefore, the evidence was sufficient for a reasonable jury to find that Schwarte knowingly possessed the child pornography.

## C. *Ineffective Assistance of Counsel*

Finally, Schwarte urges this court to overturn his conviction based on ineffective assistance of counsel. He maintains that his claim should be heard on direct appeal because his trial counsel's ineffectiveness is readily apparent. He asserts that his post-trial motion for a new trial based on newly discovered evidence, and the district court's ruling thereon, plainly demonstrated his counsel's deficiency in failing to investigate Schwarte's access to the Internet at the time he allegedly sent Abby the instant message containing the Dunlap address.

We disagree. We have repeatedly held that claims of ineffective assistance of counsel are generally best litigated in collateral proceedings, such as an action under 28 U.S.C. § 2255. *See, e.g.*, *United States v. Lewis*, 483 F.3d 871, 873 n.2 (8th Cir. 2007); *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826–27 (8th Cir. 2006); *United States v. Soriano-Hernandez*, 310 F.3d 1099, 1105 (8th Cir. 2002). "We will consider ineffective-assistance claims on direct appeal only where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." *Ramirez-Hernandez*, 449 F.3d at 827 (citing *United States v. Cook*, 356 F.3d 913, 919–20 (8th Cir. 2004)). These claims are better litigated in a collateral proceeding "because facts outside the record generally need to be developed to resolve the claim." *United States v. Hawkins*, 78 F.3d 348,

351 (8th Cir. 1996); *cf. United States v. Williams*, 897 F.2d 1430, 1434 (8th Cir. 1990) (finding that record was sufficiently developed where defendant's trial counsel and investigator had testified at post-trial hearing about their investigation of a witness).

Here, the record is not fully developed on Schwarte's ineffective-assistance-of-counsel claim. Schwarte did not raise a claim of ineffective assistance of counsel in any of his post-trial motions in the district court. Instead, in the evidentiary hearing on his motion for new trial based on newly discovered evidence, he merely presented witness testimony that he *now* argues his trial counsel should have presented at trial. Schwarte's trial counsel did not testify about whether he had investigated these witnesses and why he chose not to have them testify at trial. Because Schwarte's ineffective assistance of counsel claim involves a determination of whether counsel was reasonable in his investigation, the record is not sufficiently developed for proper review on direct appeal. Further, it is not "readily apparent" from the record before us that his trial counsel was ineffective, as the testimony Schwarte presented at his post-trial hearing did not completely foreclose the possibility that he could have accessed the Internet at work. Accordingly, we decline to consider his claim of ineffective assistance of counsel at this time.

## III. *Conclusion*

For the foregoing reasons, we affirm the judgment of the district court.

_____