KELLY, Circuit Judge,
dissenting.
The district court in this case concluded, based on the evidence presented at the suppression hearing before the magistrate judge, that under the totality of circumstances a reasonable person in Laurita’s positioh would not have felt free to terminate the interview with FBI Special Agent Howley and FBI computer scientist King. I agree that this is a close case on the issue of custody. But I disagree with the court’s conclusion that certain of the district court’s factual findings were clearly erroneous and its suggestion that the district court placed undue weight on the first Griffin factor. As a result, I respectfully dissent.
In applying - the non-exclusive Griffin factors -to determine whether Laurita was in custody, the district court found that Laurita’s freedom of movement was significantly constrained during the interview *1029 and that Agent Howley used a deceptive stratagem in conducting the interview; The court also found that, while Laurita was not arrested at the end of the interview, Agent Howley “strongly intimated that there would be criminal repercussions.” On. clear error review, we must affirm the district court’s factual findings unless they are “unsupported by substantial evidence” or “we are left with a firm and definite conviction that a mistake has been made.” Griffin, 922 F.2d at 1348. The district court’s credibility determinations, made after a hearing on the merits of a motion to suppress, are “virtually unassailable on appeal.” United States v. Schwarte, 645 F.3d 1022, 1028 (8th Cir.2011).
The district court’s finding that Lauri-ta’s freedom of movement was restricted during the interview was based on the facts that Laurita had been escorted to the interview by his supervisor, that the interview took place in a separate,' “closed-door” area of the office, that the interview took place in a small conference room with the door closed, and that Laurita was outnumbered by Agent Howley and King. In addition, though testimony differed on this point, Laurita said that Agent Howley was seated between Laurita and the door to the conference room. Laurita did not attempt to move around the ro'om during the interview, but there is no evidence that he would have felt free to db so, and it is not clear that there was anywhere for him to go if he had wanted, to move. Cf. Williams, 760 F.3d at 815 (finding no custody where Williams was “permitted to get a glass of water and to move unsupervised through his home”). At a minimum, Lauri-ta’s freedom of movement during the interview was unclear. See Sanchez, 676 F.3d at 631 (finding that it was “unclear whether [defendant’s] freedom of movement was restrained” where she was not handcuffed, but “the interview was conducted in a small,- closed room by two law enforcement officers”). Given this record, the district court’s finding that Laurita’s freedom, of movement, .was significantly constrained was not clearly erroneous.
The district court’s reliance on the fact that Laurita’s' supervisor instructed Lauri-ta to accompany him and' escorted him to the interview does warrant’ careful attention. The supervisor’s orders were not attributable to the FBI, and therefore only carried the weight associated with Lauri-ta’s obligations to . his employer. See Dockery, 736 F.2d at 1234. But that weight may nevertheless be significant; and the instructions of a manager or supervisor with meaningful-control over-an employee’s livelihood could, as a practical matter, affect a reasonable person’s perception of his freedom to leave or terminate an interview'-he was instructed to attend.. Cf id. (finding no custody where defendant’s -employer instructed her to meet with FBI agents, but defendant was advised of her right to refuse to answer question^ and initiated a second interview); Goudreau, 854 F.2d at 1098 (finding no custody where defendant’s supervisor instructed him to meet with FBI-agents, but defendant was advised that he was 'free to leave at any time); This factor is not' dispositive, and the district court did not treat it as such. Rather, coupled with other’ substantial evidence in the record, the district court’s’ finding regarding the role of the supervisor’s involvement supported the conclusion that Laurita’s freedom of movement was significantly constrained.
The district. court’s, finding that Agent Howley. had used a deceptive stratagem was also supported by the evidence presented. .We have held that the use of deceptive tacti.cs in an. interview is- not relevant to the custody- determination unless the deception would affect a reasonable .person’s perception, of his ability to *1030 leave or terminate the' interview. Ollie, 442 F.3d at 1139 (holding that falsely implying that forensic evidence incriminated defendant-was not the type of deceptive stratagem that would affect defendant’s perception of his ability to terminate the interview); Aldridge, 664 F.3d at 712 (same, citing Ollie); LeBrun, 363 F.3d at 720-21 (holding that use of deceptive tactics, including falsely telling defendant that there was significant evidence against him and various other psychological ploys, was irrelevant • to the custody determination). Though not all deceptive stratagems may bear on custody, the "specific inclusion of “strong arm tactics or deceptive stratagems” in the Griffin factors ■ establishes that deceptive stratagems can in fact affect the custody deterriiination. Griffin, 922 F.2d at 1349. Here, the district court found- that no reasonable person in Lauri-ta’s position would believe that he was free to leave or terminate the, interview without responding to. Agent- Howley’s questions about child abuse. The deceptive nature of this question arises from the fact that Agent Howley had no jurisdiction to act on Laurita’s response, regardless of his legitimate concern for the children with whom Laurita had contact. This, in combination with the pressure imposed by this extremely serious and weighted question, could have contributed to a reasonable person’s perception that he was no longer free to leave or terminate the interview.
.1 also disagree with the court’s suggestion that the district court gave undue weight to the first Griffin factor: whether Laurita was informed that he was free to leave the interview or refuse to answer questions. It is appropriate for a court to give significant weight to whether a person was advised of his right to terminate an interview or refuse to answer questions in determining his custody status. Williams, 760 F.3d at 814 (“Wé have long regarded these admonitions as weighty in the custody analysis.”) (quoting United States v. Perrin, 659 F.3d 718, 721 (8th Cir.2011)). Though the presence or absence of such an advisory is only one relevant factor, it may be “powerful evidence” of how a reasonable person would perceive his freedom to end the encounter. See Czichray, 378 F.3d at 826. Moreover, the presence or absence of an advisory may affect the weight of the other factors relevant to custody: where there is no advisory, other factors may need to more clearly indicate absence of custody. See, e.g., Diaz, 736 F.3d at 1147 (no custody where suspect was not told he was free to leave, but where he was approached by law enforcement outside in a parking lot and voluntarily entered the officers’ car after they questioned him); United States v. Thomas, 664 F.3d 217, 222 (8th Cir.2011) (no custody where suspect was not told interrogation was voluntary, but where he had requested to speak to law enforcement and interrogation took place in his mother’s home); United States v. Wallace, 323 F.3d 1109, 1110-11 (8th Cir.2003) (no custody where suspect was not told she could leave, but where she was not the target of the investigation and was questioned by a single agent in an employee lounge). I note that in LeBrun and Aldridge (as well as in Sheikh, 367 F.3d at 762), cases in which the court upheld the district court’s determinations that the, defendants were not in custody, the defendants were all advised of their right to leave the interview or refuse to answer questions.. Aldridge, 664 F.3d at 712; LeBrun, 363 F.3d at 722; cf. Ollie, 442 F.3d at 1138 (finding custody where defendant was advised that he was not under, arrest, but not of his right to terminate the interview). - Here, the district court found that Laurita’s freedom of movement -during the interview was significantly restricted, - that Laurita did not initiate the interview, that a deceptive stratagem was employed during the interview, that it was strongly implied that *1031 there would be criminal consequences of the interview, and that Laurita was not advised of his right to terminate the interview or refuse to answer questions.[2] These findings were not clearly erroneous, and the district court did not err in concluding that Laurita was in custody. I would affirm the district court’s order granting Laurita’s motion to suppress.

. In addition, I disagree with the court’s conclusions that Laurita voluntarily acquiesced to interrogation, that the interrogation took place in a location where Laurita felt comfortable and unthreatened, and that Laurita was not especially susceptible to deceptive tactics. The record.supports the district court’s specific finding that ‘‘Laurita’s conduct reveals little more than an absence of resistance” to questioning. Also supported by the record are the district court’s findings that the interview took place in a separate, closed-door area of the office and that there was no evidence that Laurita was familiar, much less comfortable, with the location. Finally, the district court made no specific findings as to Laurita’s particular susceptibility to deception. ‘ A general description of his personal circumstances— including his associate’s degree in graphic design, citation for possession of drug paraphernalia four years prior, and semi-skilled job — without- more is. insufficient to .support a conclusion that he was insusceptible to expert interrogation by an FBI agent.