# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 19-2417

———————————————

United States of America

*Plaintiff - Appellee*

v.

Robert Nathan Hensley

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

——————————

Submitted: September 25, 2020
Filed: December 16, 2020

——————————

Before LOKEN, SHEPHERD, and ERICKSON, Circuit Judges.

——————————

SHEPHERD, Circuit Judge.

Robert Nathan Hensley was charged with attempted enticement of a minor to engage in illegal sexual conduct, in violation of 18 U.S.C. § 2422(b) (Count 1); attempted production of child pornography after having previously been convicted of child sex crimes, in violation of 18 U.S.C. §§ 2251(a) and 2251(e) (Count 2); and possession of child pornography after having previously been convicted of child sex crimes, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 3). Hensley filed a motion

to suppress evidence, and after an evidentiary hearing, the district court[1] denied the motion. Following a jury trial, Hensley was found guilty on all three counts. The district court sentenced him to 420 months imprisonment on each count, to run concurrently, and supervised release for life. Hensley appeals the district court's denial of his motion to suppress as well as his conviction and sentence, arguing that the evidence was insufficient to support his convictions; that the district court erred in instructing the jury; that the government made improper and prejudicial closing remarks; and that his sentence for Count 3 was illegal. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On October 12, 2017, Hensley responded to a Craigslist advertisement posted by an FBI agent. The advertisement indicated that a father and daughter, whose age was listed as 18, were traveling through the Conway, Arkansas area and were looking to have sex. Between October 12, 2017, and October 13, 2017, Hensley and the agent, posing as the father, exchanged numerous text messages relating to Hensley's meeting the father and his "daughter" so Hensley could have sex with the daughter. Approximately five minutes into their exchange on October 12, the father told Hensley that his daughter was 14. Sometime later, Hensley texted that he was "not into minors" and also said "18 and up only." R. Doc. 1, at 4. Nonetheless, Hensley continued to exchange sexually explicit text messages with the father, in which Hensley described in detail various sex acts he wanted to perform on the daughter. He also asked the father to "[s]end front pic tits and pus." R. Doc. 1, at 5. Hensley offered to pay to perform sex acts on the daughter while the father watched, and even offered to "buy" the daughter for $3,000, for which the daughter would receive "a lifetime of bondage and sex." R. Doc. 1, at 5. Upon the father's request, Hensley texted a picture of himself.

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

At around 4:00 a.m. on October 13, 2017, Hensley called the National Human Trafficking Hotline to anonymously report suspected trafficking of a 14-year-old minor female. Later, Hensley and the agent, still posing as the father, resumed their text conversation. Through text messages, Hensley and the father agreed to meet at an Exxon gas station in Cabot, Arkansas, at 2:00 p.m.; Hensley would pay $150 to have sex with the daughter; and the father could watch. Hensley admittedly drove to the Exxon. Additionally, four law enforcement officers drove to the Exxon. Hensley and the father exchanged text messages in which each party wanted the other to reveal himself first. The meeting did not take place. Shortly thereafter, Hensley texted the father, provided his address, and invited him to his house for oral sex.

The agents drove to Hensley's address, and they used his license plate data to pull up the associated driver's license information. The photo on the license was consistent with the photo Hensley had texted to the agent. FBI Special Agent John Sablatura then placed a ruse service call to Hensley's heating and air conditioning business. Hensley left his home in his work truck, and the agents pulled him over approximately a mile from his home. They questioned him about the minor female who he suspected was being trafficked. Hensley told the agents he was glad they were there and he had information about the girl to help them out. Further, he admitted sending the text message requesting "front pic tits and pus." Eventually the agents asked Hensley if he had a laptop computer and if they could review it. The agents obtained Hensley's consent to search his home for the laptop and to search the laptop. The agents found and seized the laptop.

On October 17, 2017, Hensley was arrested and charged with attempted enticement of a minor and attempted production of child pornography. A forensic examination of the laptop revealed three images of minor children engaged in sexually explicit conduct. Subsequently, the grand jury returned a superseding indictment, adding one count of possession of child pornography.

Before trial, Hensley filed a motion to suppress the statements he made to the agents and any evidence obtained as a result of his custodial interrogation. The district court held an evidentiary hearing, at which Hensley, the agents, and other witnesses testified. Thereafter, the district court entered a comprehensive order denying the motion to suppress. The district court rejected Hensley's argument that he was unlawfully seized in violation of the Fourth Amendment when the agents pulled him over and questioned him, finding that the agents had reasonable suspicion to pull him over and that the encounter became consensual by the time questioning began. The district court further held that Hensley knowingly and voluntarily waived his Miranda[2] rights, but even if he had not, his interrogation was not custodial and thus the agents were not required to give him any Miranda warnings.

At trial, FBI Computer Analysis Response Team analyst Tim Whitlock testified for the government. He found three images of child pornography in unallocated space on Hensley's laptop, meaning the images were on the computer but had been deleted either by the user or the computer's operating system. He could not definitively say who deleted the images or when they were deleted. Whitlock explained that the images were digital and could have been received on the laptop or transferred from another digital source, but he could not definitively say which. Hensley's computer expert, Robert Gray, testified that the images could have been accessed by Hensley from links found on the websites in Hensley's browser history, as described in the trial exhibits. While Hensley denied producing or saving the images, he testified that he surfed the internet in his free time, typically for sexually explicit material by searching and then clicking on links. He did not testify about using any other digital source to access or upload sexually explicit material. It is undisputed that the laptop on which the images were found was manufactured in China.

Hensley's browser history revealed an interest in pornography where youth was emphasized, and the government introduced this history as evidence at trial.

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

Hensley admitted intentionally accessing all of the websites in the trial exhibits. For example, he accessed the website "youngpetite.org," the description of which included the word "teen." Gray testified that the websites' homepages indicated there was no child pornography on the sites and that there was a very high likelihood that no child porn was on the sites. Gray admitted, however, that he did not access the content of those sites but rather visited only the homepages. Hensley accessed some of the sites using the private browser function, although he denied using the function intentionally.

Both experts testified that the images found on Hensley's laptop could have been intentionally accessed from the internet or could have been temporarily saved without the user's knowledge as "pop-ups," which refer to items automatically opening on a computer. Hensley described seeing pop-ups when he accessed "adult videos" or websites. Whitlock determined that the laptop was used to access the internet and that Hensley was the user. Hensley admitted at trial that he used the laptop to access the internet, including the websites listed in the government's exhibits.

Whitlock testified that a program called CCleaner was on Hensley's laptop. CCleaner is a cleaning software that deletes and assists in hiding items. Whitlock determined that CCleaner was run at 1:52 a.m. on October 13, 2017. Gray testified that the launch of CCleaner did not necessarily mean Hensley's laptop was cleaned then. Hensley admitted that a store installed CCleaner on his laptop, but he denied intentionally launching it.

The government introduced into evidence certified records of Hensley's prior child sex crimes convictions. When Special Agent Sablatura was asked on direct examination about the nature of the convictions, Hensley requested a limiting instruction. The district court gave a limiting instruction during trial and admonished the jury that it "may not consider these convictions as evidence he actually committed the crimes that he's charged with in this case." R. Doc. 111, at 35. Hensley did not object or request any other specific language in this limiting

instruction. The district court admitted only the nature of the prior convictions, not any of the underlying facts.

Over Hensley's objection, the district court's jury instruction on the attempted enticement charge contained the following illustrative example: "The act of driving to a planned meeting location has been found sufficient to show that a defendant took a substantial step towards commission of the crime." R. Doc. 91, at 13. Also over Hensley's objection, the district court's jury instruction on the attempted production charge contained the following illustrative example: "Asking for nude pictures of a minor may constitute a substantial step to produce child pornography." R. Doc. 91, at 16. Additionally, the district court instructed the jury that it could consider evidence of Hensley's prior convictions for its tendency to show a propensity to commit sex offenses against children, as well as to determine Hensley's intent, knowledge, and lack of mistake. R. Doc. 91, at 5. The district court's instructions further reminded the jury: "[I]f you were instructed that some evidence was received for a limited purpose only, you must follow that instruction." R. Doc. 91, at 4.

At the close of the evidence, Hensley moved for judgment of acquittal, which the district court denied. The jury returned a guilty verdict on all counts. The district court sentenced Hensley to three concurrent terms of 420 months imprisonment. During sentencing, Hensley acknowledged more than once that he faced a mandatory minimum of 420 months, or 35 years, on Count 2. At one point the district court acknowledged that the statutory maximum for Count 3 is 20 years but stated that Count 2's mandatory minimum "governs this sentence." R. Doc. 109, at 23. Hensley did not object to the sentence on Count 3.

On appeal, Hensley challenges: (1) the district court's denial of his motion to suppress; (2) the sufficiency of the evidence supporting his convictions; (3) the district court's jury instruction regarding his prior convictions and its use of illustrative examples in Instruction Nos. 9 and 11; (4) five of the government's closing remarks as being so prejudicial that they warrant reversal; and (5) the legality

of his sentence for Count 3. Due to the nature of the issues, we will begin by addressing the sufficiency of the evidence.

## II.
## A.

Hensley challenges the sufficiency of the evidence supporting his convictions for Counts 1-3. "We review the sufficiency of the evidence supporting a conviction de novo, 'viewing the evidence most favorably to the verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences.'" United States v. Riepe, 858 F.3d 552, 558-59 (8th Cir. 2017) (citation omitted). The verdict must be upheld "if 'there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" Id. at 559 (citation omitted).

## 1.

Hensley argues that the evidence was insufficient to support his conviction for attempted enticement of a minor to engage in illegal sexual conduct, in violation of 18 U.S.C. § 2422(b). To convict Hensley of enticement of a minor, the government must prove beyond a reasonable doubt that he: "(1) 'used a facility of interstate commerce, such as the internet or the telephone system;' (2) 'knowingly used the facility of interstate commerce with the intent to . . . entice a person to engage in illegal sexual activity;' and (3) 'believed that the person he sought to . . . entice was under the age of eighteen.'" United States v. Young, 613 F.3d 735, 742 (8th Cir. 2010) (citation omitted). To prove an attempt, the government must prove that the defendant intended to commit the predicate offense and took a substantial step in furtherance of the offense. See United States v. Bernhardt, 903 F.3d 818, 827 (8th Cir. 2018).

Hensley contends that the evidence is insufficient to sustain his conviction on this count because: (1) he was responding to a Craigslist advertisement which listed

the female's age as 18; (2) his text messages with the undercover agent indicated that Hensley was seeking a sexual encounter with a female who was 18 years old; and (3) he had no direct communication with the minor and alerted the National Human Trafficking Hotline about the situation. Additionally, he asserts that he did not take any substantial step towards committing the offense.

The evidence is sufficient to show that Hensley intended to entice the fictitious minor female to engage in illegal sexual conduct and that he took a substantial step towards commission of the offense by planning and ultimately driving to the Exxon station to meet the minor and her "father." In Hensley's messages with the undercover agent, the agent made it clear to Hensley that the fictitious minor was 14 years old. Hensley continued to engage in the conversation, responding multiple times with sexually explicit messages and inquiring as to whether the agent would "sell her." It is clear from the messages that Hensley was negotiating sexual activity with a minor child, and in particular that he was intending to violate Ark. Code Ann. § 5-14-127 (sexual assault in the fourth degree). His assertions to the contrary simply created a factual dispute for the jury to resolve, and a reasonable jury could have found unpersuasive his testimony that he was not serious about the exchange. Again, from the explicit nature of the messages, which evince an intent to have sex with the minor in exchange for cash, and his actually making plans to meet the "girl" and her "father," a reasonable jury could easily reject Hensley's view of the evidence and discount certain facts in his favor. The fact that the minor did not exist, or that Hensley never met her or communicated directly with her, is of no moment, as attempted enticement may occur through an adult intermediary or when there is no actual minor involved. See United States v. Spurlock, 495 F.3d 1011, 1014 (8th Cir. 2007) ("[T]he efficacy of § 2422(b) would be eviscerated if a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective." (citation omitted)); United States v. Pierson, 544 F.3d 933, 939-40 (8th Cir. 2008) (affirming conviction for attempted enticement of a minor where "victim" was an undercover profile posing as a 13-year-old girl); see also United States v. Yost, 479 F.3d 815, 819 n.2 (11th Cir. 2007) (per curiam) (explaining that an actual minor is not required for an attempted enticement conviction and that "[i]t is

-8-

sufficient that a defendant believe a minor is involved"). Finally, the fact that he arranged for and traveled to a potential meeting at the Exxon station satisfied the substantial step requirement. See Young, 613 F.3d at 743 (explaining that defendant's reserving a motel room and traveling to the motel in order to have sex with a minor constituted substantial steps towards committing the crime of enticement of a minor); see also Spurlock, 495 F.3d at 1014 (explaining that making plans with minors' mother to meet at a motel in order to have sex with minors constituted a substantial step towards committing the crime of enticement of a minor). Accordingly, we conclude that the evidence is sufficient to sustain Hensley's conviction for attempted enticement of a minor.

2.

Next, Hensley argues that there was insufficient evidence to support his conviction for attempted production of child pornography. To convict Hensley of attempted production of child pornography, the government needed to prove beyond a reasonable doubt that: (1) he believed that the female was a minor; (2) he attempted to entice the minor to engage in sexually explicit conduct; (3) he intentionally engaged in this behavior in order to produce a visual depiction of that conduct; and (4) he used a means of interstate or foreign commerce. See United States v. Schwarte, 645 F.3d 1022, 1030 (8th Cir. 2011). The government also needed to prove that Hensley took a substantial step towards the commission of the offense. Id.

Hensley does not dispute that he sent a text message to the undercover agent instructing the agent to send a photograph of the minor's breasts and vagina. Instead, Hensley argues that he did not believe the female was a minor, as evidenced by his messages in which he stated that the minor female looked 18 and that he was not interested in a minor child, and his message was not intended to be taken seriously. He also asserts that because there were no actual images, the jury would have resorted to speculation as to what those images would have depicted. Finally, he

argues that mere nudity is insufficient to prove that the images would have depicted sexually explicit conduct.

The evidence is sufficient to show that Hensley believed the female was a minor and that, using a means of foreign commerce, he attempted to entice her to engage in sexually explicit conduct for the purpose of producing a visual depiction of said conduct. See Pierson, 544 F.3d at 938-40 (finding sufficient evidence for attempted production conviction where defendant and fictitious minor discussed minor's age to be 13 and defendant asked minor to transmit nude pictures of herself via webcam). First, there was ample evidence showing that Hensley believed the fictitious female was a minor. Indeed, the text messages between him and the undercover agent repeatedly reference the minor's age, 14. Additionally, Hensley called the National Human Trafficking Hotline to report his belief that a 14-year-old female was a potential victim of trafficking. Based on the evidence, a reasonable jury could conclude that Hensley believed the female was a minor and reject his testimony to the contrary.

Second, a reasonable jury could have disbelieved Hensley's claims that his request was not a serious one. He admitted on cross-examination that nothing in his request to the undercover agent would indicate that he was not sincere. Moreover, the explicit nature of his request, his prior convictions for sex offenses, and comments demonstrating his sexual purpose all supported a finding that Hensley was quite serious in requesting this image.

Third, there was sufficient evidence from which a reasonable jury could find that Hensley was seeking sexually explicit images. In the context of child pornography, "sexually explicit conduct" includes "lascivious exhibition of the anus, genitals, or pubic area of any person." 18 U.S.C. § 2256(2)(B)(iii). "Lascivious" means "sexual in nature." United States v. Wallenfang, 568 F.3d 649, 657 (8th Cir. 2009) (citation omitted). "Lasciviousness may be found when an image of a nude or partially clothed child focuses on the child's genitals or pubic area and is intended to elicit a sexual response in the viewer." United States v. Petroske, 928 F.3d 767,

772 (8th Cir. 2019).  Here, Hensley requested an image of the minor female's vagina while negotiating with the undercover agent to have a sexual encounter with the minor, and the nature of the messages evinced an inference that Hensley's request was intended for sexual purposes.  Accordingly, a reasonable jury could infer from the evidence that Hensley was intentionally seeking a sexually explicit or lascivious image of the minor female.

Finally, it is established that asking for an image of a minor's genitals constitutes a substantial step to produce child pornography.  Schwarte, 645 F.3d at 1030-31 (explaining that defendant took a substantial step towards committing production of child pornography where he asked minor to send him nude pictures and videos of herself, offered to provide her a laptop in exchange for said pictures or videos, and provided a mailing address where she could mail the video).  Accordingly, we conclude that the evidence is sufficient to sustain Hensley's conviction for attempted production of child pornography.[3]

3.

Next, Hensley challenges the sufficiency of the evidence supporting his conviction for possession of child pornography.  To convict Hensley of possession of child pornography, the government needed to prove beyond a reasonable doubt that Hensley: (1) knowingly possessed an item of child pornography, and that (2) the

---

[3]Hensley also argued in his reply brief and at oral argument that, because the photo he requested may have already existed at the time he requested it, the jury could not find beyond a reasonable doubt that he enticed or persuaded a minor to engage in sexually explicit conduct in order to produce a visual depiction of it.  He cites a Second Circuit case, United States v. Broxmeyer, 616 F.3d 120 (2d Cir. 2010), in support of this proposition.  But "[t]his [C]ourt does not consider issues raised for the first time on appeal in a reply brief 'unless the appellant gives some reason for failing to raise and brief the issue in his opening brief.'"  Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) (citation omitted).  Hensley does not provide a reason for his failure to raise and brief this argument in his opening brief.  Therefore, the argument is waived.  See id.

item was transported or produced in interstate or foreign commerce by any means. See Schwarte, 645 F.3d at 1033.

Hensley brings two main challenges to the sufficiency of the evidence as to Count 3. He first argues that the government failed to prove the jurisdictional element beyond a reasonable doubt. He does not dispute that agents found three images of child pornography in unallocated space on Hensley's computer. He also does not dispute that the computer on which the images were found was manufactured in China, which this Court has found sufficient to satisfy the jurisdictional element of § 2252. See United States v. Koch, 625 F.3d 470, 479 (8th Cir. 2010) (citing United States v. Mugan, 441 F.3d 622, 627-30 (8th Cir. 2006)). Accordingly, Hensley's first argument fails.

Second, Hensley asserts that the evidence was insufficient to show that he knowingly possessed the images by virtue of their location in unallocated space on his computer. Although "the location of child pornography in inaccessible internet and orphan files can raise serious issues of inadvertent or unknowing possession . . . these are issues of fact, not of law." United States v. Kain, 589 F.3d 945, 949 (8th Cir. 2009). Here, there was sufficient circumstantial evidence supporting a finding that Hensley knowingly possessed the images, even if there is some evidence supporting his alternative explanation that he did not know those files were located on his computer and were automatically downloaded by his browser. Where the evidence "rationally supports two conflicting hypotheses," we "will not disturb the conviction." United States v. McArthur, 573 F.3d 608, 614-15 (8th Cir. 2009) (citation omitted) (affirming conviction for possession of child pornography over defendant's argument that images' location in unallocated space meant he did not knowingly possess them). A reasonable jury could find that Hensley knowingly possessed these images, notwithstanding the fact that they were located in unallocated space on the computer. Accordingly, we conclude that the evidence was sufficient to sustain Hensley's conviction for possession of child pornography.

B.

Hensley also contends that the district court erred in instructing the jury in two respects. First, Hensley challenges the instruction on how the jury may properly consider the evidence of his prior convictions. Second, Hensley challenges Instruction Nos. 9 and 11's illustrative examples regarding a "substantial step" for Counts 1 and 2, respectively.

1.

Hensley argues that the district court erred in not giving a written limiting instruction that his prior convictions may not be considered as evidence that he committed the crimes at issue. We review the district court's instruction on prior conviction evidence for plain error because Hensley failed to make a contemporaneous objection before the district court. See United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011). To succeed under the plain error standard, Hensley must show there was an error that is clear or obvious under current law; the error affected his substantial rights; and the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

At trial, the government introduced into evidence certified records of Hensley's prior child sex crimes convictions. Hensley then requested a limiting instruction, which the district court granted. As Hensley requested, the district court verbally admonished the jury that it "may not consider these convictions as evidence he actually committed the crimes that he's charged with in this case." R. Doc. 111, at 35. Hensley did not object or request any other specific language in this limiting instruction.

At the initial instructions conference, Hensley requested a "[Federal Rule of Evidence] 404(b) limiting instruction" regarding his prior convictions. The district court rejected his request because, under Rule 414, his prior convictions were admissible for more purposes than his proposed instruction allowed. Before the final

instructions conference, the district court circulated to the parties its limiting instruction, which reads as follows:

> You have heard evidence that the defendant has previously been convicted of other sex offenses concerning children. You may consider this evidence for its tendency, if any, to show the defendant's propensity to engage in crimes such as those charged in the Superseding Indictment. You may also consider that evidence to determine the defendant's intent, knowledge, and whether the charges in the Superseding Indictment are a result of mistake.

R. Doc. 91, at 5. We find the district court's instruction to be an accurate statement of law. See Fed. R. Evid. 414 (providing that, in a criminal case where the defendant is accused of certain sex offenses, evidence that the defendant committed other such sex offenses is admissible and "may be considered on any matter to which [they] [are] relevant"); Fed. R. Evid. 404(b) (providing that "[e]vidence of a crime, wrong, or other act" is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Hensley did not object to this instruction, despite having the opportunity to do so at the time the instruction was first discussed and again following consideration of the last instruction. Moreover, although Hensley had proffered a limiting instruction stating that the jury may not convict a person simply because they believe he may have committed similar crimes in the past, the instruction further stated that the jury may consider prior convictions "only on the issue of [his] intent or lack thereof." The district court rejected the instruction as "too limiting" because it did not say the prior convictions were admissible to show propensity, knowledge, or lack of mistake or accident. R. Doc. 115, at 3-4. The district court did not err in rejecting Hensley's instruction because it was an incorrect statement of law. Additionally, the district court's Instruction No. 2 reiterated the limitation on the jury's consideration of Hensley's prior convictions, stating: "[I]f you were instructed that some evidence was received for a limited purpose, you must follow that instruction." "[A] jury is presumed to follow all instructions." United States v. Paul, 217 F.3d 989, 997 (8th Cir. 2000) (citing Jones v. United States, 527 U.S. 373, 394 (1999)).

Even if it was error for the district court not to expressly repeat in the written jury instructions the admonition that the jury could not consider Hensley's prior convictions as evidence that he actually committed the crimes at issue, that error was not clear or obvious under existing law. Given the district court's verbal and written instructions as a whole, the substantial evidence presented, and the fact that only the convictions and not the underlying facts were admitted, any error did not affect Hensley's substantial rights or the fairness, integrity, or reputation of the proceedings. See Poitra, 648 F.3d at 887. Accordingly, there is no plain error warranting relief.

2.

Hensley timely objected to the district court's use of illustrative examples in Instruction Nos. 9 and 11. "Accordingly, we review for abuse of discretion." United States v. White, 863 F.3d 784, 790 (8th Cir. 2017). "[W]e evaluate jury instructions by viewing them as a whole and affirm if the instructions fairly and adequately submitted the issues to the jury." United States v. Wright, 246 F.3d 1123, 1128 (8th Cir. 2001).

A district court "may comment on evidence to assist the jury so long as it makes it clear that the jurors must make all factual determinations themselves." United States v. Ray, 250 F.3d 596, 602 (8th Cir. 2001). However, it must avoid placing undue emphasis on one party's evidence. See Caviness v. Nucor-Yamato Steel Co., 105 F.3d 1216, 1222 (8th Cir. 1997). "A [district] court must be careful if it intends to tie in principles of law to the facts." Vanskike v. ACF Indus., Inc., 665 F.2d 188, 202 (8th Cir. 1981).

We find the Tenth Circuit's decision in United States v. Bowen, where the court rejected a defendant's challenge to a jury instruction containing an illustrative example, to be instructive. See 437 F.3d 1009, 1017 (10th Cir. 2006). In Bowen, the defendant was charged with and convicted of possession with the intent to

distribute methamphetamine.  Id. at 1013-14.  The court determined there was sufficient evidence to support the jury's verdict, including evidence that the defendant constructively possessed the drugs based on his presence in the car where the drugs were found, his reaching under the passenger's seat, his nervousness around the police, and the plastic baggies associated with drug distribution that police found in his pockets.  Id. at 1015.  On appeal, he challenged a jury instruction explaining what the government must show to prove that he constructively possessed the drugs.  Id. at 1016-17.  The challenged instruction stated:

> In addition to knowingly having the power or ability to control an object, the government must prove an act on the part of the defendant by which that power or ability is manifested and implemented, such as an act placing the object within easy reach of the defendant, or an act concealing the object from view.

Id. at 1017 (emphasis omitted).  The defendant complained that the above-quoted portion "provided a 'formula for conviction' because it supplied the jury with specific examples of the evidence which would support a plausible inference that he had knowledge of" the drugs.  Id.  The Tenth Circuit concluded that the instruction was not reversible error.  Id.  It reasoned that the instruction was a correct statement of the law and that the examples "assisted the jury's understanding of constructive possession."  Id. at 1018.  Further, the court opined that the examples "were worded broadly and did not too closely track the specific facts presented in [the defendant's] case.  Equally important, the examples provided did not unduly emphasize the prosecution's theory of the case, or usurp the jury's fact finding role."  Id.

By contrast, the Second Circuit in United States v. Dove vacated a defendant's conviction for bank robbery based upon two "unbalanced" jury instructions.  See 916 F.2d 41, 45-46 (2d Cir. 1990).  The first challenged instruction centered on the eyewitnesses' failure to identify the defendant in the courtroom after identifying him in a police lineup.  Id. at 43-44.  The first instruction read as follows:

The government has the burden of proving [the defendant's] identity as the perpetrator beyond a reasonable doubt. In this connection, *it is not essential that a witness be able to identify a defendant in open Court or be free from doubt as to the correctness of her identification of the defendant by other means.* However, if you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find him not guilty.

Id. at 44 (emphasis added). The court concluded the instruction was "unbalanced because it instructed the jury as to how the [government's key] witnesses' inability to identify the defendant in the courtroom might bear on guilt without indicating how this rather significant evidence might bear on innocence." Id. at 45. The court further noted that the imbalance could have been cured by adding the defendant's proposed one-sentence instruction advising the jury that it was "free to consider and weigh the effect" of the eyewitnesses' failure to identify the defendant in the courtroom. Id.

The second challenged instruction concerned the difference between direct and circumstantial evidence. Id. at 44. The majority of the government's evidence was circumstantial. See id. at 43-44. The instruction read as follows:

Now, to illustrate the difference between direct and circumstantial evidence, let us assume that the fact in issue in a case is whether Jack shot and killed Mary. If a witness testified that he personally saw Jack shoot Mary, then we would say we have direct evidence of that fact. On the other hand, if a witness testifies that an hour before Mary was shot he sold Jack the pistol which has been identified as the murder weapon, and it was found in Jack's possession shortly after the murder, we would say we have circumstantial evidence of the fact that Jack did shoot Mary. That, as I say, is a very simple illustration and has no direct bearing on this case at all, but is illustrative of what I mean by circumstantial evidence.

Id. at 44. The Second Circuit opined that this instruction was improper because it assumed Jack's guilt in the premise, "and the jury is merely instructed how to look for evidence of that guilt." Id. at 46. Although the example "was not analogous to

-17-

the facts of this case, the use in a criminal case of a hypothetical that assumes guilt where defendant asserts his innocence is disfavored." Id. The court also pointed out that "[v]irtually all of the circumstantial evidence pointed towards the possibility of [defendant's] innocence." Id. Finally, the court noted that the government and the defense had jointly urged the district court to use a neutral hypothetical, which the district court rejected. Id. at 45-46.

We are troubled by the district court's use of one-sided illustrative examples in Instruction Nos. 9 and 11, particularly Instruction No. 11's close similarity to the facts of Hensley's case. The examples are troublesome because they explain how the jury could find in favor of the government on the attempt element without explaining how the jury might find in favor of Hensley. However, viewing the instructions as a whole, see Wright, 246 F.3d at 1128, we conclude that the district court did not commit reversible error. Importantly, the district court also instructed the jury that it "should not take anything I have said or done during the trial as indicating what I think of the evidence or what I think your verdict should be." R. Doc. 115, at 88. In so doing, the district court made clear that "the jurors must make all factual determinations themselves." See Ray, 250 F.3d at 602. And like the instructions in Bowen, Instruction Nos. 9 and 11 are correct statements of law. See United States v. Herbst, 666 F.3d 504, 511 (8th Cir. 2012) (driving to a location may constitute a substantial step); Schwarte, 645 F.3d at 1030-31 (asking minor to send nude pictures and videos of herself, offering to provide her a laptop in exchange for said pictures or videos, and providing a mailing address where she could mail video is a substantial step in furtherance of production of child pornography). Additionally, they assisted the jury's understanding of a substantial step with respect to Counts 1 and 2. Cf. Bowen, 437 F.3d at 1018. Moreover, the instructions were permissive and did not compel the jury to reach a particular conclusion regarding the evidence. Although Instruction No. 11 arguably tracks more closely with the facts of Hensley's case than the instruction in Bowen, this fact does not change our conclusion. Taken as a whole, the instructions do not unduly emphasize the prosecution's theory or usurp the jury's fact-finding role.

The government represented at oral argument that the use of illustrative examples is common practice in the Eastern District of Arkansas. Nevertheless, we discourage the use of such one-sided jury instructions, particularly where, as here, they contain illustrative examples which track closely with the facts of a defendant's case. Nonetheless, the district court's inclusion of such examples here falls short of reversible error.

C.

Hensley next contends that the prosecutor made five improper remarks and misstated the evidence during closing arguments, and that these remarks and misstatements were so grave that they warrant reversal and remand for a new trial. Because Hensley failed to object to the closing remarks at trial, we review them only for plain error. See United States v. Robinson, 439 F.3d 777, 780 (8th Cir. 2006). First, the government remarked that Hensley waited at the Exxon for two-and-a-half to three hours. Second, the government stated that a person cannot get to the private browser function without being intentional about it. Third, the government argued that Hensley's accessing browser sites was intentional and that the experts did not testify that the sites in his browser history showed up as pop-ups. Fourth, the government argued that police found only three child porn images on Hensley's computer because Hensley ran the CCleaner program and spent time deleting images. Finally, the government stated that Gray, the defense expert, did not access the actual content of the porn sites in Hensley's browser history because "he knew what was on it," implying that he knew they contained child pornography.

Having carefully reviewed the five challenged remarks, we conclude that they were fairly supported by the evidence or reasonable inferences therefrom, and any error was not so prejudicial as to warrant reversal under plain error review. Additionally, because the district court properly instructed the jury on the elements of the offenses and "instructed the jury that arguments of counsel are not evidence, there is no plain error warranting relief." See United States v. Mullins, 446 F.3d 750, 760 (8th Cir. 2006) (citation omitted).

-19-

III.

Hensley further argues that the district court erred in denying his motion to suppress on the sole ground that his interrogation on October 13, 2017, was custodial and the agents failed to advise him of his <u>Miranda</u> rights. "In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo." <u>United States v. Ferguson</u>, 970 F.3d 895, 901 (8th Cir. 2020).

Even if the district court's failure to suppress Hensley's statements was error, we find it was harmless. "An error is harmless if it does not affect substantial rights of the defendant, and did not influence or had only a slight influence on the verdict." <u>United States v. Martinez</u>, 462 F.3d 903, 910 (8th Cir. 2006) (citation omitted). Given the other admissible evidence against Hensley, including his own testimony at trial, we conclude that failure to suppress his statements did not sufficiently influence the jury as to require reversal. Accordingly, any error was harmless. <u>See id.</u> (finding district court's failure to suppress defendant's statements to be harmless error given other evidence).

IV.

Finally, Hensley challenges the legality of his sentence for Count 3, arguing that 420 months imprisonment exceeds the statutory maximum. The government agrees. But because Hensley did not object to the illegality of the sentence at sentencing, it is reviewed only for plain error. <u>See</u> <u>United States v. Bossany</u>, 678 F.3d 603, 606 (8th Cir. 2012) (failure to object at trial to illegality of sentence that exceeded statutory maximum results in plain error review). Though this error is plain, under plain error review, we may correct the error only if it "affects substantial rights[] and 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" <u>Id.</u> (quoting <u>United States v. Pirani</u>, 406 F.3d 543, 549 (8th Cir. 2005) (en banc)). An error affects substantial rights by "prejudicially influenc[ing] the outcome of the district court proceedings." <u>Id.</u> (alteration in original) (citation

omitted).  In this sentencing context, Hensley must show that, "absent the error, the [district] court could not have imposed [420] months[] imprisonment as his total punishment."  Id. at 607.  As Hensley acknowledged more than once during sentencing, the mandatory minimum sentence for Count 2 is 420 months.  Thus, even absent the plain error as to Count 3, the district court was required to impose 420 months imprisonment as Hensley's total punishment.  Accordingly, Hensley cannot show prejudice necessary for plain error relief as to the sentence, and Hensley's request to vacate the sentence is denied.

V.

For the foregoing reasons, we affirm the judgment of the district court.

_____