# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2781
_____

United States of America

*Plaintiff - Appellee*

v.

Jay Thompson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: May 12, 2021
Filed: September 3, 2021

_____

Before COLLOTON, WOLLMAN, and KOBES, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury convicted Jay Thompson of attempting to entice a minor to engage in illegal sexual activity in violation of 18 U.S.C. § 2422(b). The district court[1] sentenced Thompson to the statutory mandatory minimum sentence of 120 months'

[1]The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

imprisonment. See 18 U.S.C. § 2422(b). Thompson argues that there was insufficient evidence presented at trial to support his conviction, that he is entitled to a new trial because of prosecutorial misconduct, and that the district court erred in denying his motion to compel. We affirm.

## I. Background

During an online campaign to identify child predators in Northwest Arkansas, Benton County, Arkansas, Detective Alison Nguyen adopted the undercover persona of a thirteen-year-old girl named "Skye." She posted a personal ad on Craigslist that stated, "Looking for new friends" and "Mature for my age.. sick of drama.. looking to make new friends!"[2] Nguyen was part of a Homeland Security Investigations Internet Crimes Against Children task force. She was twenty-eight years old at the time of Thompson's March 2020 trial.

Thompson replied to Nguyen's ad on September 25, 2019. He was forty-three years old at trial time. He inquired over email whether Skye was "still looking," to which Nguyen responded that she was, noting, "I'm 13.. hope that's ok." Following a brief email exchange, Thompson asked Skye for a photo, and Nguyen replied, "You first." Thompson sent a self-photograph, and Nguyen, in turn, sent a self-photograph to which she had applied a filter so that she appeared to have animal ears and an animal nose. Thompson exclaimed, "You are beautiful!" In response to Nguyen's question whether he was "ok with [her] being younger," Thompson said, "Sure."

---

[2]Nguyen's personal ad is quoted in this opinion as set forth in Thompson's Presentence Investigation Report, and the emails and text messages exchanged by Thompson and Nguyen are quoted as set forth in the trial exhibits, without grammatical or punctuation corrections.

Thompson later inquired whether Nguyen partied, and Nguyen replied in the affirmative. Thompson then asked whether she enjoyed "420 friendly, skate, [or] drink." Nguyen initially feigned ignorance, but then said, "Yea I'm good with weed, and alcohol."[3] Thompson also asked whether Skye was a cop, to which Nguyen replied, "What No?" Thompson thereafter requested evidence that Skye was in fact a real person. He asked her to "take a pic of [he]rself holding up 3 fingers." Nguyen suggested that they continue the conversation over text message and sent her phone number. Thompson texted Skye, and Nguyen responded with another self-photograph—this one unedited and portraying her holding up two fingers.

The two continued to correspond via text message that day and the next. They discussed meeting in person. Although Nguyen did not repeat Skye's age, she disclosed that Skye lived in an RV with her aunt. Posing as Skye, Nguyen repeatedly told Thompson that she wanted to make him happy. Thompson often introduced sexual topics, once asking Skye if she would "sit on [his] face." Skye said that she would, and both Thompson and Nguyen testified that the proposition referred to oral sex. Nguyen told Thompson that she had "given a BJ" but had "never had oral" and was "still a virgin." Thompson requested a picture of Skye masturbating, but Nguyen declined, noting that she had "had guys send them out before." Thompson persisted, asking Skye if she would video-chat "and get naked," but Nguyen again refused.

The two agreed that Thompson would visit Skye's RV while her aunt was away. Thompson suggested that they "start with oral and go from there" and "[m]aybe 69," which Nguyen testified referred to an oral sex position. Upon his arrival at the RV, Thompson was arrested by task force members and taken to the Homeland Security Investigations field office, where he was read his Miranda rights. Thompson was then interviewed by Task Force Officer Kevin Sears, who prepared

---

[3]Nguyen testified at trial that "420 friendly" refers to being comfortable with marijuana use.

a subsequent report but was involuntarily removed from the task force prior to trial. Homeland Security Investigations Special Agent Gerald Faulkner was also present for the interview. Faulkner testified at trial that the interview was not recorded because the recording device's battery power had failed.

Thompson surrendered his cell phone during the interview. Thompson testified that he did so after requesting an attorney. When reviewing the cell phone data, task force members found Thompson's emails and messages with Skye. The data review also revealed numerous responses to other Craigslist ads, but no other messages with apparent minors.

Thompson was indicted for attempted enticement of a minor to engage in any sexual activity for which a person can be charged with a criminal offense. See 18 U.S.C § 2422(b). The indictment listed as the crime for which Thompson could have been charged Arkansas Code Annotated Section 5-14-127, which prohibits a person twenty years old or older from engaging "in sexual intercourse or deviate sexual activity" with someone who is under the age of sixteen and is not the person's spouse. See Ark. Code Ann. § 5-14-127(a)(1)(A). Before trial, Thompson moved to compel production of a document explaining why Sears was removed from the task force. After reviewing the document *in camera*, the district court denied Thompson's motion. The government did not call Sears to testify at trial, but called Nguyen and Faulkner, among other witnesses.

The only disputed issue at trial was whether Thompson believed Skye to be a minor.[4] Faulkner testified that, based on his recollection and his review of Sears's

---

[4]As set forth above, the indictment charged Thompson with attempting to "entice an individual whom he believed had not attained the age of 18 years" in violation of 18 U.S.C § 2422(b). The indictment specifically relied upon an Arkansas law criminalizing certain sexual activity with a person under the age of sixteen. See Ark. Code Ann. § 5-14-127(a)(1)(A). At trial, the jury instructions required a specific

report, Thompson had stated in the post-arrest interview that he believed the person he was meeting in the RV was "under 16." Thompson testified that he had thought that Skye was lying to him and that she was an adult—based on her forehead wrinkles and under-eye bags, the size of her head, and the amount of makeup apparent in both of her self-photographs, as well as based on some of her comments and her understanding of drug- and sex-related adult slang. Thompson explained that when he said that he was okay with Skye being younger, he meant he was okay with Skye being younger than forty-three years old. Thompson testified that he had had extensive experience with Craigslist personal ads, that posters routinely lied about everything from age to sex to occupation, and that he had believed that Skye's repeated assertions that she wanted to do what would make him happy indicated that she might be a prostitute or an undercover police officer posing as a prostitute for a sting operation. Thompson also testified that he did not tell Faulkner or Sears that he thought the person he was meeting was "under 16." The prosecutor inquired:

> [Prosecutor]: Okay. So Agent Faulkner was lying when he said that?
>
> [Thompson]: Yes.
>
> * * *

[Prosecutor]: Is this just all a conspiracy against you? Is that what you believe that this is?"

[Thompson]: I don't know what it is, but it really feels like it. It honestly seems like a witch hunt.

Defense counsel did not object to these questions.

---

finding that Thompson believed the individual was "less than eighteen (18) years of age." We consider the difference between the two statutes to be immaterial because Thompson does not argue that he believed Skye to be between the ages of sixteen and eighteen. We therefore describe the government's burden of proof as showing that Thompson believed Skye to be "a minor."

The government then called Faulkner to testify in rebuttal, asking the following:

[Prosecutor]: Could you tell this jury what happens if you lie?

[Faulkner]: I would potentially get fired and could also come up on criminal charges. And that's not something that I would ever do, jeopardize my career or to put a stain on my agency, and more importantly, to put my family's life in jeopardy.

Thompson's counsel did not object. The district court denied Thompson's motion for judgment of acquittal.

In closing, defense counsel argued that he "d[id]n't know" why there were certain discrepancies in the evidence. Although he did not explicitly accuse Faulkner of lying, defense counsel described as "convenient" the facts that Faulkner's testimony about Thompson's alleged confession "just happens to track a law in Arkansas" and that the interview "wasn't recorded or the batteries died." The prosecutor responded by arguing during rebuttal that for the jury to acquit, it must find that there was a conspiracy against Thompson and that Faulkner was lying. The prosecutor also argued that if the jury found that Faulkner was lying, he could lose his career, be prosecuted, and jeopardize his family. Again, defense counsel raised no objections to the rebuttal argument, following which Thompson was found guilty and sentenced as set forth above.

## II. Analysis

### A. Sufficiency of the Evidence

Thompson argues that the evidence was insufficient to convict him and that he was thus entitled to a judgment of acquittal. We review *de novo* the sufficiency of the

evidence, "viewing the evidence in the light most favorable to the verdict and giving the verdict the benefit of all reasonable inferences." United States v. Free, 976 F.3d 810, 813 (8th Cir. 2020). "We will reverse a conviction 'only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" Id. at 813–14 (quoting United States v. Fool Bear, 903 F.3d 704, 708 (8th Cir. 2018)). Jurors are "the judges of the credibility of testimony offered by witnesses," United States v. Bailey, 444 U.S. 394, 414 (1980), and their credibility findings are "virtually unreviewable on appeal," United States v. Hernandez, 569 F.3d 893, 897 (8th Cir. 2009) (citation omitted). Thompson argues that the government failed to prove beyond a reasonable doubt, as it was required to do, that Thompson "believed that the person he sought to . . . entice was [a minor]." United States v. Hensley, 982 F.3d 1147, 1154 (8th Cir. 2020) (alteration in original) (citation omitted); see also United States v. Helder, 452 F.3d 751, 756 (8th Cir. 2006) (holding that "an actual minor victim is not required for an attempt conviction under § 2422(b)").

Based on the evidence presented at trial, a reasonable jury could find that Thompson believed that Skye was a minor. The personal ad described Skye as mature for her age and "sick of drama." Nguyen told Thompson in their first exchange that Skye was thirteen and sent him an edited, child-like photograph. Nguyen testified that she used the phrase "sick of drama" and a "filtered" photograph because based on her experience, the vernacular and the photo-filtering practice were common among underage girls. A reasonable jury could find that Thompson's being "ok with [Skye] being younger" meant that he was okay with her being the homeschooled, sexually inexperienced, living-with-a-relative child that she held herself out to be.

We reject Thompson's implication that his conviction rested only on Faulkner's testimony that Thompson confessed that he had believed Skye to be a minor. Thompson argues that the discrepancies between his testimony and Faulkner's testimony, as well as the government's failure to call Sears—the actual

interviewer—undermined Faulkner's credibility. It is, however, "for the jury, not a reviewing court, to evaluate the credibility of witnesses and to weigh their testimony." United States v. Never Misses A Shot, 781 F.3d 1017, 1025 (8th Cir. 2015) (citation omitted). Thompson's testimony that he believed Skye was lying about her age and that he did not confess during the interview "simply created a factual dispute for the jury to resolve, and a reasonable jury could have found unpersuasive his testimony" that he thought he was speaking to an adult prostitute. See Hensley, 982 F.3d at 1155.

We also reject Thompson's argument that no reasonable juror could have found that he believed Skye to be a minor, in light of Nguyen's self-photographs, the evidence that Thompson was exchanging messages with ten or more adults whom he had met on Craigslist, and the fact that Nguyen did not repeat Skye's age when they switched from emails to text messages. Here we consider "not whether a reasonable jury could possibly conceive of an alternative interpretation of the evidence at trial," but instead whether any reasonable jury could have found Thompson guilty. See United States v. White Bull, 646 F.3d 1082, 1089 (8th Cir. 2011). The evidence here was sufficient to support the jury's findings.[5]

## B. Prosecutorial Misconduct

Thompson alleges that several instances of prosecutorial misconduct denied him a fair trial. He argues that it was improper for the prosecutor to ask Thompson

---

[5]We also disagree with Thompson's contention that United States v. Ciesiolka, 614 F.3d 347 (7th Cir. 2010), is substantially similar to his case. In Ciesiolka, the defendant's conviction was vacated based not on insufficient evidence but on the district court's improper "ostrich" instruction that distorted the *mens rea* required for conviction. Id. at 354 (jury instructed that it could convict based on finding that defendant was merely "suspicious" and "indifferent" to the age of the online persona with whom he corresponded). No such instructions were present here; the district court correctly instructed the jury.

on cross-examination, "So Agent Faulkner was lying when he said that?" He also argues that it was improper for the prosecutor to argue that the jury would have to find that Faulkner had lied in order to reach a finding of acquittal, an argument the prosecutor repeated during rebuttal.

Thompson additionally argues that it was likewise improper for the prosecutor to insinuate that acquittal would require the jury to find that Faulkner was willingly risking "los[ing] his career, [being] prosecuted, and [putting] his family in jeopardy" by testifying as he did.

Because Thompson did not object to the now-challenged statements, "we may reverse the conviction[] only if the alleged misconduct rises to the level of plain error." United States v. Frokjer, 415 F.3d 865, 873 (8th Cir. 2005).

Without in any manner intending to bestow our imprimatur on the cited remarks and comments, we concluded that they did not so infect Thompson's trial with unfairness that the conviction must be reversed. As set forth above, this case did not turn substantially on Faulkner's testimony, because a reasonable jury could have convicted on Nguyen's testimony and the email and text message records alone.

Moreover, the district court's instructions to the jury were sufficiently curative to minimize any risk of prejudicial impact. See United States v. Eagle, 515 F.3d 794, 806 (8th Cir. 2008).

## C. Motion to Compel

Thompson also argues that the district court erred when it denied his motion to compel production of the document explaining why Sears was involuntarily removed from the Homeland Security Investigations task force.

We review for abuse of discretion rulings on pretrial motions for production, reversing "only on a showing that the error was prejudicial to the substantial rights of the defendant." United States v. White Horse, 316 F.3d 769, 773 (8th Cir. 2003) (citation omitted). Prosecutorial suppression "of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Prosecutorial disclosure duties extend to evidence that the defense might use to impeach the government's witness. United States v. Bagley, 473 U.S. 667, 676 (1985).

Our review of the sealed document leads us to conclude that the district court did not abuse its discretion in denying Thompson's motion. The document contains neither evidence directly related to Thompson's case nor evidence that is material to Thompson's guilt or punishment. Moreover, the government did not call Sears as a witness, and thus the document could not have been used for purposes of impeachment. See Fed. R. Crim. P. 16(a)(1)(E) (requiring discovery, upon defendant's request, only of information material to the defense, that the government intends to use in its case-in-chief, or that belongs to the defendant).

Conclusion

The judgment is affirmed.

_____

-10-