# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3044
_____

United States of America

*Plaintiff - Appellee*

v.

Eswin Lopez

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 11, 2023
Filed: July 20, 2023
_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A federal jury convicted Eswin Lopez of attempted sex trafficking of a minor after he responded to an advertisement, negotiated a price for sexual relations with a 15-year-old, and traveled almost an hour through a snowstorm to a designated meeting point with items requested by the purported minor. At the end of Lopez's

trial, he moved for a judgment of acquittal, which the district court[1] denied. On appeal, Lopez raises a limited sufficiency-of-the-evidence challenge. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

On January 9, 2021, Lopez responded to an ad on skipthegames.com—a known escort website—titled "A Warm, Wet, PRINCESS Fairy Tale." The ad, placed by an undercover officer, featured sexually suggestive photographs of a young woman as well as explicit messages advertising various sexual services for the price of $100 per half hour and $200 per hour. The woman's age was listed as 19. Interested parties were instructed to contact a specific phone number, a number which was being used by undercover law enforcement. On January 10, Lopez texted the phone number, "Hey baby Send me ur addres and a picture baby." The undercover officer responded, "Im 15 is that okay? How old r u?" along with a picture of a young, clothed female with butterflies on her face. Lopez answered, "I dont know is that ok for u? Uo to you." The undercover officer later asked, "How old r u?" To which Lopez—28 at the time—responded, "23."

The following day, Lopez again messaged the phone number and asked, "Hey baby where are you now I wanna see you." The undercover officer replied, "Im in school, Im 15 so I have school during the day." Lopez, not dissuaded, then asked, "Can I go pick you up baby," followed by "I am out here now im not working now." The undercover officer ignored these messages, and the conversation instead turned to negotiating a deal for sexual services. The undercover officer asked Lopez how much time he wanted with the purported 15-year-old, Lopez requested 2 hours, and the undercover officer informed Lopez it would cost him $300. Lopez then went on to send the purported 15-year-old several vulgar messages requesting a variety of sexual services.

---

[1]The Honorable Robert F. Rossiter, Jr., Chief Judge, United States District Court for the District of Nebraska.

On January 13th, Lopez started trying to arrange a time for the pair to meet. He suggested several different days and times, but struggled to find one that could work for both of them, as the purported 15-year-old reminded Lopez multiple times that she was in school and would not be available until after school hours. It was not until January 15th that the pair found a mutually agreeable time: 4:30 pm that afternoon. They also ironed out the following specifics:

> Undercover Officer: Ok r we using ur car?
> Lopez: Yes bby
> Undercover Officer: Okay, bring condoms to start and if I feel comfortable with u we can take it off
> Lopez: Come on bby
> Lopez: I dobt wanna use that
> Undercover officer: Can u bring me some alcohol so I'm less nervous then?
> . . .
> Lopez: Yes I can baby
> Lopez: Tell me what kind of beer do u like
> Undercover Officer: Bud Light is fine

Lopez then agreed to meet the undercover officer at a Target in Omaha. The pair also revised their previous arrangement of $300 for 2 hours to $80 for 30 minutes.

As 4:30 pm approached, the undercover officer asked Lopez what kind of car he would be driving, and Lopez replied that he was driving a black Toyota. Lopez again reiterated his desire not to use a condom stating, "No condom bby I told u," "Plz," and "But no condom." Lopez then traveled almost an hour from his job in Waverly, Nebraska, to Omaha, Nebraska—despite a snowstorm—to meet the purported 15-year-old. After Lopez arrived at the prearranged meeting place in his black Toyota, deputies with the Douglas County Sheriff's Office took him into custody. They found over $100 cash in Lopez's wallet and a 25-ounce can of Bud Light on the front passenger seat of his vehicle.

A federal grand jury subsequently indicted Lopez on attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591 and 1594(a). Lopez proceeded to trial.

At trial, in an effort to convince the jury that he had no knowledge that he was meeting with a minor on January 15th, Lopez pointed to several text conversations extracted from his phone which showed that on January 15th, he was contacting four separate individuals requesting sex for money, only one of whom, of course, was the undercover officer. Lopez argued to the jury that because he was contacting so many different individuals at the same time, and because he frequently deleted the text messages with these individuals, he simply got confused and did not realize that he was going to meet with a 15-year-old in Omaha, but instead, thought that he was meeting with an adult commercial sex worker. The jury, however, was not convinced, and it found Lopez guilty of attempted sex trafficking of a minor. The district court sentenced Lopez to 120 months' imprisonment followed by 5 years of supervised release. Lopez now appeals, arguing that there was insufficient evidence to convict him. Specifically, he argues that the government "failed to prove that [he] was knowingly attempting to meet an underage girl for a sexual encounter." Appellant Br. 8.

## II.

"We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Atkins, 52 F.4th 745, 751 (8th Cir. 2022) (citation omitted). "The verdict must be upheld 'if "there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt."'" United States v. Hensley, 982 F.3d 1147, 1154 (8th Cir. 2020) (citation omitted).

As relevant here, sex trafficking of a minor occurs when a defendant "knowingly . . . in or affecting interstate or foreign commerce, . . . recruits, entices, . . . or solicits by any means a person; . . . knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). Section 1594(a) then provides that an attempted violation of § 1591 "shall be punishable in the same manner as a completed violation." Of course, "a crime

charged as an attempt has two elements: 'intent to commit the predicate offense, and conduct that is a substantial step toward its commission.'" United States v. Wolff, 796 F.3d 972, 974 (8th Cir. 2015) (per curiam) (citation omitted). A person intends to commit the offense of commercial sex trafficking of a minor "when he subjectively intends 'to engage in a commercial sex act with someone he believed to be a minor . . .' even if that belief is mistaken." United States v. Slim, 34 F.4th 642, 648 (8th Cir. 2022) (citation omitted). "[A] person takes a substantial step in furtherance of this offense when he drives to a set meeting place with [items such as] cash and condoms." Id.

Here, viewing the evidence in the light most favorable to the jury verdict, there is ample support for Lopez's conviction. The evidence showed that Lopez responded to the undercover officer's ad and, over five days, repeatedly expressed his desire to have various forms of sexual relations with the person advertised even after learning and being reminded several times that she was only 15 years old. Lopez then extensively discussed his aversion to using condoms with the 15-year-old and negotiated a price and time to have sex with her. Lopez then drove almost an hour through a snowstorm to meet her at a prearranged meeting location and brought along both $100 in cash and the specific alcohol she requested that he bring to calm her nerves. We have held similar evidence sufficient in the past. See, e.g., Slim, 34 F.4th at 648 (concluding sufficient evidence supported conviction when defendant expressed desire to see alleged minor even after being told she was 15 and showed up at prearranged meeting place with cash and condoms); Hensley, 982 F.3d at 1154-55 (concluding sufficient evidence supported conviction under similar statute when defendant continued to engage in sexually explicit conversations with individual he believed was the father of a 14-year-old female and made plans to meet with the purported father and minor to have sex with minor).

As to Lopez's argument that he was not sure which of the multiple sex workers he was ultimately going to meet in Omaha on January 15th, the jury was free to believe or disbelieve this story at trial, and it apparently chose the latter. See Hensley, 982 F.3d at 1155 (stating that defendant's story that he was not serious

about sexual exchange with a minor "created a factual dispute for the jury to resolve, and a reasonable jury could have found unpersuasive his testimony that he was not serious"). We will not disturb this finding on appeal.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____