# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, MORRIS, and JUETTEN
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant JOHN PENALOZA**
**United States Army, Appellant**

ARMY 20230473

Headquarters, 25th Infantry Division
Michael E. Korte, Military Judge (motions)
Rebecca L. Farrell, Military Judge (trial)
Colonel Christopher Martin, Staff Judge Advocate

For Appellant: Major Robert D. Luyties, JA (argued); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Captain Stephen R. Millwood, JA (on brief); Colonel Philip M. Staten, JA; Major Robert D. Luyties, JA; Captain Stephen R. Millwood, JA (on reply brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert D. Luyties, JA; Captain Stephen R. Millwood, JA (on supplemental reply brief).

For Appellee: Major Patrick S. Barr, JA (argued); Colonel Richard E. Gorini, JA; Major Marc B. Sawyer, JA; Major Patrick S. Barr, JA (on brief); Colonel Richard E. Gorini, JA; Major Patrick S. Barr, JA (on supplemental reply brief).

28 February 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

JUETTEN, Judge:

On appeal, appellant challenges the factual and legal sufficiency of his conviction of attempted sex trafficking of a child in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (2019) [UCMJ]. Specifically, appellant asserts that his lack of cash at the meeting location precludes a finding that he took a substantial step towards completing the underlying offense; and, that the government failed to introduce independent evidence proving beyond a reasonable doubt he intended to engage in a commercial sex act, as required under 18 U.S.C. §1591(a).

We agree the conviction is factually and legally insufficient and provide relief in our decretal paragraph.[1]

## BACKGROUND

A military judge sitting as a general court-martial convicted appellant, contrary to his plea, of attempted sex trafficking of a child, under 18 U.S.C. §1591(a), in violation of Article 80, UCMJ.  The military judge sentenced appellant to sixty days of confinement.

### A. The "Kylie" Operation

In December 2022, Hawaii Criminal Investigation Division [CID] Special Agent [SA] ██ created a profile (hereinafter "Kylie") on "Bumble," an adult dating application, for an undercover online operation focused on human trafficking.  "Kylie" had a photo of SA ██, listed her age as "18," her location as Schofield Barracks, her interests as "Making Money" and "The Game," and indicated she was seeking "something casual."

On 12 December 2022, SA ██ found appellant's Bumble profile, where he described himself as "Government Property" and located on Schofield Barracks.  SA ██ "swiped right"[2] and initiated contact with appellant through the application.  Appellant then asked her "[w]hat kinda fun you looking for on here[?]," to which "Kylie" responded "[t]he exciting kind" with a devil emoji.  Shortly thereafter, "Kylie" requested the conversation switch from Bumble to "Snapchat," an instant messaging application.

On Snapchat, appellant asked "when we linking up for some fun[?]" to which "Kylie" replied "I'm not free though.  Ru ok w $50 for BJ or like $200 for normal sex[.]"  Prior to responding, appellant requested a video in order to "[l]et me see you're real[.]"  Appellant then asked to "link" and what brought "Kylie" to Schofield Barracks.  She responded "Nahh haha not married waay [sic] to young for that[; m]y mom kicked me out and I just got here to live with my aunt[.]"  A few

---

[1] We have also considered the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.  Appellant's other assignments of error are rendered moot by our decision.

[2] "Swiping right" in the "Bumble" application indicates that a user is interested in another user's profile and is a required step before the users can engage in messaging through the application.

texts later and 27 minutes into their conversation, "Kylie" revealed she was "[a]lmost 17" years-old.

As the text conversation continued, "Kylie" prompted "[y]ou want to have sex or bj?" and appellant answered "[s]ex," and he would "pay you cash[.]" "Kylie" continued "Ok u cool w $200? Do u have cash on u?" to which appellant responded yes, and when pressed for proof, stated he would go to the automated teller machine [ATM]. Appellant later sent a photograph representing a bank account balance.

Over the next five hours, appellant asked to meet with "Kylie" multiple times. During their conversation, appellant also told "Kylie" he had never paid for sex and made a number of attempts to confirm "Kylie's" identity and age, which "Kylie" ignored. The conversation ended with "Kylie" suggesting the two "hang out 4 lunch tomorrow."

The next morning, "Kylie" initiated contact with appellant by sending a message, "well good morning 2 u" with an image[3] of her wearing a bathrobe captioned with "Want to come cuddle[?]." Appellant responded to her offer, to which she asked "When r u ready? Did u grab the cash yesterday?" Appellant responded "Yes[.]"

On his way to meet "Kylie" at Watts Field, an athletic field on Schofield Barracks, appellant called "Kylie." When SA ███ answered, appellant said words to the effect of, "Oh, you're actually real. I didn't think you were real until now." Shortly before arriving at the athletic field, he texted "I think this might be a bad idea[.]"

When appellant arrived at Watts Field, law enforcement quickly arrested him. A search of appellant and his vehicle did not reveal any cash.

### B. Synopsis of Appellant's Court-Martial

At trial, the government did not introduce evidence that appellant withdrew cash on 12 or 13 December 2022 or that he had any cash on his person. Further, no evidence was provided of an alternate means to pay. In fact, when redirecting SA ███, the government unsuccessfully attempted to expand the potential methods of payment beyond those explicitly negotiated by appellant and "Kylie." The military judge then questioned SA ███, who admitted that only "cash" was contemplated and

---

[3] SA ███ did not use age regression technology to alter any of the photographic images she sent to appellant.

that no other form of payment was discussed or would be allowed by "Kylie" as part of the operation.

The government did not introduce evidence that appellant had ever previously inquired about paying for sex. Instead, in the messages exchanged with "Kylie," appellant specifically stated he had never previously paid for sex.

**LAW**

*A. Standard of Review*

*1. Legal Sufficiency*

With respect to legal sufficiency, our review is de novo. *United States v. Robinson*, 77 M.J. 294, 297 (C.A.A.F. 2018). "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 297-98 (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). Because we must draw "every reasonable inference from the evidence of record in favor of the prosecution," the standard for legal sufficiency "involves a very low threshold to sustain a conviction." *United States v. Smith*, 83 M.J. 350, 359 (C.A.A.F. 2023) (quoting *Robinson*, 77 M.J. at 297-98; *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

*2. Factual Sufficiency*

This court reviews questions of factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Additionally, the National Defense Authorization Act for Fiscal Year 2021 amended Article 66(d)(1)(B), UCMJ, Factual Sufficiency Review, to provide:

(i) In an appeal of a finding of guilty under subsection (b), the Court may consider whether the finding is correct in fact upon request of the accused if the accused makes a specific showing of a deficiency in proof.

(ii) After an accused has made such a showing, the Court may weigh the evidence and determine controverted questions of fact subject to—

(I) appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence; and

(II) appropriate deference to findings of fact entered into the record by the military judge.

(iii) If, as a result of the review conducted under clause (ii), the Court is clearly convinced that the finding of guilty was against the weight of the evidence, the Court may dismiss, set aside, or modify the finding, or affirm a lesser finding. Pub. L. No. 116-283, §542(b), 134 Stat. 3611-12.

The Court of Appeals for the Armed Forces (CAAF) recently addressed the application of Article 66(d)(1)(B) in *United States v. Harvey*, __ M.J. __, 2024 CAAF LEXIS 502 (C.A.A.F. 6 Sep. 2024). First, the CAAF held if the two "trigger conditions (i.e., an assertion of an error and a showing of a deficiency) are not met, then nothing in amended Article 66, UCMJ, either requires or allows. . ." this court to review the factual sufficiency of the evidence. *Id.* at *5. Assuming the trigger conditions are met, the CAAF construed the requirement of "appropriate deference" to imply "that the degree of deference will depend on the nature of the evidence at issue," and Article 66 "affords the CCA discretion to determine what level of deference is appropriate." *Id.* at *7-8. With respect to the last part of the analysis, the CAAF held "the quantum of proof necessary to sustain a finding of guilty during a factual sufficiency review is 'proof beyond a reasonable doubt,' the same as the quantum of proof necessary to find an accused guilty at trial." *Id.* at *10. The CAAF concluded:

> Accordingly, for a CCA to be "clearly convinced that the finding of guilty was against the weight of the evidence," two requirements must be met. First, the CCA must decide that the evidence, *as the CCA has weighed it*, does not prove that the appellant is guilty beyond a reasonable doubt. Second, the CCA must be clearly convinced of the correctness of this decision.

*Id.* at *12 (emphasis in original).

### B. Attempted Sex Trafficking of a Child

Appellant was charged with an attempt under Article 80, UCMJ, which requires "[a]n act done with specific intent, to commit an offense...amounting to more than mere preparation and tending, even though failing, to effect its commission." The elements of attempt are: (1) that the accused did a certain overt act; (2) that the act was done with the specific intent to commit a certain offense under the code; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *United States v. Payne*, 73 M.J. 19, 24 (C.A.A.F. 2013) (citing MCM pt. IV, para. 4.b.). The third element of an attempt requires "that the accused take a 'substantial step' toward commission of a crime." *Id.* (citing *United States v. Jones*, 37 M.J. 459, 461 (C.M.A. 1993)). A "substantial step" requires a showing that an accused went beyond "devising or arranging the means or measures necessary for the commission of the offense" and, instead, engaging in a "direct movement toward the commission

after the preparations are made." *Jones,* 37 M.J. at 461 (quoting *United States v. Schoof,* 37 M.J. 96, 103 (C.M.A. 1993). While "the substantial step must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances" it could "be comprised of something as benign as travel, arranging a meeting, or making hotel reservations." *United States v. Hale,* 78 M.J. 268, 272 (C.A.A.F. 2019) (citing *United States v. Winckelman,* 70 M.J. 403, 407 (C.A.A.F. 2011).

## DISCUSSION

### *1. The Absence of a "Substantial Step" Toward the Offense*

The evidence presented, when viewed in the light most favorable to the government, fails to show beyond a reasonable doubt that appellant took a "substantial step" toward the offense. The entire transaction as alleged and as framed by SA ███ required payment in cash – cash was the only acceptable form of payment, and SA ███ rejected any other potential form of payment when questioned at trial. Appellant did not bring cash to the meeting at Watts Field and did not possess cash at the time of his arrest. The government did not introduce evidence that the appellant withdrew or attempted to withdraw cash or had any acceptable means of payment on him. Without cash on hand, the government cannot show the crime would have taken place unless interrupted by independent circumstance, as appellant would be unable to complete the crime due to a lack of acceptable payment.

In appellant's case, travel alone does not constitute a substantial step. While arranging a meeting or traveling may constitute a substantial step, it must be accompanied by evidence of a firm intent to complete the offense. *Hale,* 78 M.J. at 272. Here, appellant's arrival at Watts Field, without cash on hand, does not prove an intent to pay. Unlike other federal cases under 18 U.S.C. §1591 raised by the government, here the accused lacked the means to pay with cash or with some other agreed upon item of value.[4]

---

[4] Unlike *United States v. Larive,* 794 F.3d 1016 (8th Cir. 2015), where the accused arrived with a cellphone he intended to trade for sex; *United States v. Lopez,* 74 F.4th 915 (8th Cir. 2023), where the accused was found with $100 cash in his wallet at the meeting site; and *United States v. Wright,* 2022 U.S. App. LEXIS 16157 (7th Cir. 2022), where the accused brought $100 cash in his pocket to pay for sex; in the instant case, the evidence presented at trial showed the appellant lacked the means to complete the alleged transaction.

The substantial step "must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances." *Hale*, 78 M.J. at 272 (citing *Winckelmann,* 70 M.J. 403, 407). Because the government charged appellant with harboring the specific intent to cause "Kylie" to engage in an act of prostitution, the substantial step must be some act that could exclude the reasonable possibility that appellant was attempting to engage in legal conduct – such as sexual activity without payment. *See United States v. Gonzalez-Rodriguez*, 7 M.J. 633, 637 (A.C.M.R. 1979).

### 2. *Failure to Prove Specific Intent*

Attempted sex trafficking of a child, as charged[5] by the government under Article 80, UCMJ, for attempting to violate 18 U.S.C. § 1591(a), and relevant to this case, occurs when an accused "knowingly. . . patronizes, or solicits by any means a person" and "that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act."

Under 18 U.S.C. § 1591(a), the government must prove that the appellant knowingly patronized or solicited a minor for a "commercial sex act." A "commercial sex act" means any sex act, on account of which anything of value is given or received by any person. 18 U.S.C. §1591(e)(3). Appellant's conduct is only criminal if he specifically intended to pay for sex with "Kylie," however, there is a fair and rational hypothesis that appellant did not intend to pay for sex when he arrived to Watts Field. In fact, without the cash, he could not pay for sex in a manner acceptable to "Kylie."

"Kylie" initially presented she was "18" on her Bumble profile. Later, after initiating flirtatious conversation with appellant, and after introducing sex, "Kylie" informed appellant she was "almost 17," implying that she was sixteen years-old – above the age of consent under both Hawaii law and the UCMJ. Appellant was legally permitted to have consensual sex with "Kylie," and his actions were only criminal if he intended a commercial transaction for sex.

As noted previously, SA ███ made clear that the only form of acceptable payment was cash, and Appellant arrived without cash on him. Without cash or

---

[5] The Specification of Charge I alleged, "In that Sergeant John Penaloza, U.S. Army, did, at Schofield Barracks, Hawaii, within the special maritime and territorial jurisdiction of the United States, on or about 13 December 2022, attempt to knowingly patronize and solicit "Kylie," a person he believed to be under the age of 18 years, to engage in a commercial sex act, in violation of 18 U.S. Code § 1591, an offense not capital."

another form of acceptable payment, the act could not be "commercial." Further, appellant raised evidence that supports a rational hypothesis other than guilt – that he was interested in meeting "Kylie," and even having sex with her, but had not yet clearly formed an intent to pay. SA ▇ sought out appellant on an adult dating application and made first contact with him. Appellant never initiated a discussion about paying for sex, and some of the communications between appellant and "Kylie" suggested a romantic or non-commercial interest. SA ▇ introduced the idea of payment nearly 30 minutes into flirtatious banter with appellant. Appellant sent images of his body and flirted with SA ▇, suggesting he hoped she would have sex with him without payment. Appellant and "Kylie" used words like "cuddle" and made plans for lunch and to hang out. Unlike cases where defendants repeatedly confirm a desire to engage in a financial transaction, appellant wavered and expressed doubt – as most significantly shown by his lack of cash or means of payment at Watts Field.

The government did not present independent evidence that appellant was predisposed to engage in commercial sex transactions, beyond the discussions with SA ▇ described above.[6] In fact, appellant told SA ▇ he had never paid for sex previously, and there was no corroborating evidence of a prior history of soliciting commercial sex acts or prostitution.

### 3. Legal Insufficiency

Drawing every reasonable inference and viewing the evidence in the light most favorable to the government, we find no rational trier of fact could have found the elements proven beyond a reasonable doubt for this offense. *Robinson,* 77 M.J. at 297-98 (quoting *United States v. Rosario,* 76 M.J. 114, 117 (C.A.A.F. 2017). At best, appellant's actions show he desired and intended to have sex with "Kylie," a sixteen-year-old, on Schofield Barracks. However, they do not show a substantial step towards the offense, or that appellant had the specific intent to engage in a commercial sex act. We therefore find this charge to be legally insufficient and provide relief in our decretal paragraph.

---

[6] Appellant raised entrapment as a separate assignment of error. However, given our decision that the findings are legally and factually insufficient, we do not find a need to further address the entrapment argument. We note, in the context of entrapment, "[w]hen a person accepts a criminal offer without being offered extraordinary inducements, he demonstrates his predisposition to the type of crime involved." *United States v. Whittle,* 34 M.J. 206, 208 (C.M.A. 1992) (citing *United States v. Evans,* 924 F.2d 714, 717 (7th Cir. 1991). The discussion above pertains to the sufficiency of the evidence to prove specific intent, not to the evidence as it may relate to entrapment.

*4. Factual Insufficiency*

Under *Harvey* and Article 66(d)(1)(B), UCMJ, this court has a duty to weigh the evidence, giving appropriate deference to the trial court, and to make its own factual determinations. Even if we were to find a rational trier of fact could have found appellant guilty and thus legally sufficient, we find this conviction to be factually insufficient.

The first *Harvey* "trigger" condition raised by appellant is an error in the proceedings. The trial court conflated mere preparation with a substantial step and did not properly consider the significance of appellant's arrival at Watts Field without cash. This fact negates intent to enter a commercial transaction for sex.

The second "trigger" under *Harvey,* a deficiency in proof, is that the government failed to prove beyond a reasonable doubt that appellant intended to engage in a commercial sex act. Without cash, there was no ability for appellant to complete the transaction as proposed by SA █████ undermining the government's theory of the case. Further, no independent evidence corroborated the government's claim that appellant had a premeditated intent to engage in a commercial transaction for sex.

Considering the *Harvey* standards and giving appropriate deference to the trial court and its findings, the government has not shown the appellant was guilty beyond a reasonable doubt, and we are clearly convinced of the correctness of this decision.

## CONCLUSION

For the foregoing reasons, we conclude the conviction is legally and factually insufficient.

The finding of guilty and the sentence are SET ASIDE. The Specification of Charge I and Charge I are DISMISSED.

Chief Judge POND and Judge MORRIS concur.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court